[No. S022660. Dec. 21, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
WASH JONES WILLIAMS, Defendant and Appellant.

COUNSEL

Michael J. Hanley, under appointment by the Supreme Court, for Defendant and Appellant.

Kenneth I. Clayman, Public Defender (Ventura), Neil B. Quinn, Deputy Public Defender, Garcia & Schnayerson, Philip A. Schnayerson and Joseph E. Mockus as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Joanne S. Abelson, Deputy Attorneys General, for Plaintiff and Respondent.

Thomas W. Sneddon, Jr., District Attorney (Santa Barbara), Gerald McC. Franklin, Deputy District Attorney, Elizabeth Bader, Michael Willemsen, Schachter, Kristoff, Orenstein & Berkowitz and Margaret A. Murray as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

ARABIAN, J.—Our task is to delineate the circumstances under which a trial court is required to give a requested instruction regarding a rape defendant's bona fide and reasonable, but mistaken, belief of consent to sexual intercourse. We conclude that the instruction was not warranted in this case, and hence reverse the judgment of the Court of Appeal.

## I. Facts and Procedural Background

On Saturday, November 4, 1989, Deborah S. and her sister Jenny S. were staying at the Episcopal Sanctuary homeless shelter at Eighth and Market Streets in San Francisco. They had arrived in San Francisco from Wichita, Kansas approximately two weeks earlier. Deborah and Jenny returned to the shelter mid-Saturday morning after completing some errands. Jenny entered the shelter, and Deborah waited outside.

Shortly after Jenny's departure, Deborah was approached by defendant Wash Jones Williams. Deborah had not met Williams before, and he did not introduce himself. Williams was an electrician, and a volunteer and resident at the shelter. He had noticed Deborah at the shelter the day before, but had not spoken with her. Deborah was 28 years old, 5 feet 1 inch tall, and weighed 117 pounds. Williams was 52 years old, 6 feet 1 inch tall, and weighed 220 pounds.

Williams asked if Deborah would like to get some coffee, "no strings attached." Williams and Deborah agree that for the remainder of the morning they walked, engaged in conversation, and ate some food.

Deborah testified to the events that followed that day. During a stop at a Jack-In-The-Box, Williams asked her if she would like to watch television. Deborah said the only place she knew of to watch television for free was the Osmond Center, located next door to the shelter. Williams later told her the place he was talking about to watch television was not far away.

Deborah and Williams walked towards Turk Street. Williams purchased a bracelet from a street vendor for Deborah. The area was unfamiliar to her. Deborah thought they were going to "his friends or something" to watch television, because "That is what he was talking about." Williams mentioned nothing about sex, and in fact led Deborah to believe he was not interested in sex because he mentioned that he had a daughter about Deborah's age.

They stopped at a building with a gate across the front, and Williams rang a buzzer. While Deborah did not see a sign in front of the building, the building was later identified as the Dahlia Hotel. Once inside, Williams rented a room, and asked the clerk for a sheet. At this point Deborah realized they were in a hotel, and were not going to a friend's house.

Deborah walked into the room ahead of Williams. She noticed that there was no television. When Williams arrived, she asked him how it was that he wanted to watch television when there was no television in the room. He lay

down on the bed and said he wanted Deborah to lie down beside him. She said that she was used to sitting up during the day, and suggested that he get back the $20 he paid for the room. Deborah went to the door to let herself out, but was unable to release the bolt lock. Williams came up behind her, and put his hand on the door. She told him to "make it easy for the both of us" by trying to get his money back. He "hollered" at her that "he didn't spend $20.00 for nothing." He punched her in the left eye. He said he would count to five, and he wanted her "over there in the bed." She said "no," so he pushed her down on the bed. Williams asked her if she wanted him to use a condom. She said no because "I am not going to do it anyway," and that she did not come there for that.

Williams told Deborah to take off her pants. She asked "Why do I need to take off my pants?" He repeated his demand that she take off her pants, and said that he did not like to hurt people. She was scared, so she removed her pants. He took off his clothes, got on top of her, and attempted intercourse. His penis partially penetrated her vagina. Deborah said that she was going to tell her sister and the Sanctuary "what he really was." He screamed that he "didn't give a fuck." He said something about "too dry," and then licked his fingers and rubbed saliva on his penis. He reinserted his penis and engaged in sexual intercourse for approximately 10 to 15 minutes. She screamed and tried to push him off, but because of the disparity in their size, her efforts were unsuccessful.

Once Williams had ejaculated, he allowed Deborah to get up and get dressed. He offered her $50, but she said she was not a prostitute and did not want the money. She threw the bracelet at him.

Deborah left the room first. She returned to the Sanctuary, where she asked directions to the nearest police station. She walked to the San Francisco Hall of Justice, and reported that she had been raped. At this point her eye was so swollen she could hardly see out of it. According to witnesses other than Deborah, an officer took her statement, and then drove her to the hospital where he and then another officer waited with her for approximately seven hours until she was examined. The examining nurse and doctor testified that the injury to the eye was more consistent with a punch than a slap. Vaginal slides showed the presence of semen. In addition to the eye injury, the doctor noted complaints of pain on the right side of her neck and along the right side near the lower ribs, and tenderness along the right side of the uterus. The doctor testified that Deborah appeared scared, and that the examination was consistent with her complaint of sexual assault.

Williams gave a dramatically different account of the encounter. He testified that prior to entering the hotel room, he neither wanted nor expected

to have sex. However, when he entered the room, Deborah hugged and kissed him and began to remove her clothes, whereupon Williams also began to remove his clothes. Williams asserted that he is diabetic and almost impotent, and therefore Deborah had to fondle his genitals for 10 to 15 minutes before helping him to insert his penis into her vagina. This was the only act of intercourse. He and Deborah never discussed watching television.

After intercourse, Deborah told Williams she needed $50 because her sister was moving in with her boyfriend, and she was not sure if she would fit in. He told her he did not "turn tricks" and refused to give her the money. She became hostile and "Her personality changed completely." She threatened to create a problem for him by telling Father Nunn and her sister if he did not give her the money. Williams said that he did not care whom she told, that she had come to the room voluntarily, and "we made love." Deborah called Williams a "welching Nigger," and said she knew how to "fix" him, since her father and either brother or brothers-in-law had previously raped her. Angry at these remarks, Williams slapped her hard on the right, not the left, side of her face. He asked for the return of the bracelet, and she threw it on the bed. As she got dressed, Williams asked Deborah why she did not wipe away his sperm, and she said that she wanted to preserve the evidence.

The trial court found that the evidence supported a jury instruction regarding consent. It refused, however, to give an instruction requested by both defendant and the People on reasonable and good faith but mistaken belief as to consent. (CALJIC No. 10.65.)[1]

A jury found Williams guilty of two counts of forcible rape (Pen. Code[2] § 261, now subd. (a)(2).[3]) and one count of false imprisonment (§ 236). He was sentenced to eight years in state prison.

---

[1]The version of CALJIC No. 10.65 submitted by defendant in his proposed jury instructions provided in relevant part:

"In the crime of forcible rape, general criminal intent must exist at the time of the commission of the forcible rape. There is no general criminal intent if the defendant had a reasonable and good faith belief that the other person voluntarily consented to engage in sexual intercourse. Therefore, a reasonable and good faith belief that there was voluntary consent is a defense to such a charge.

"If after a consideration of all of the evidence you have a reasonable doubt that the defendant had general criminal intent at the time of the sexual intercourse, you must find him not guilty of such crime." (CALJIC No. 10.65 (5th ed. 1988).)

[2]All statutory references contained herein are to the California Penal Code unless otherwise indicated.

[3]Section 261 currently provides in relevant part:

"(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . . .

The Court of Appeal reversed, finding there was substantial evidence in support of defendant's request for a *Mayberry* instruction. (*People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337].) In particular, the court relied on defendant's testimony that Deborah "willingly accompanied him to the hotel after spending several hours in his company, that she did not object when the hotel clerk handed him a bedsheet, that once inside the room she hugged and kissed him and initiated sexual intercourse, and that during the hour they were inside the room the hotel clerk did not hear any screams or other sounds indicating physical violence." The Court of Appeal stated that "Based on this evidence, the jury should have been given the instruction. While defendant has the burden of proving he had a bone [*sic*] fide and reasonable belief of consent, he need only raise a reasonable doubt in the minds of the jury whether this belief existed . . . and should be allowed the chance to prove this defense."

## II. Discussion

In *People* v. *Mayberry*, *supra*, 15 Cal.3d 143, this court held that a defendant's reasonable and good faith mistake of fact regarding a person's consent to sexual intercourse is a defense to rape. (*Id*. at p. 155.) *Mayberry* is predicated on the notion that under section 26,[4] reasonable mistake of fact regarding consent is incompatible with the existence of wrongful intent. (*People* v. *Mayberry*, *supra*, 15 Cal.3d at pp. 154-155; see *People* v. *Hernandez* (1964) 61 Cal.2d 529, 535 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092] [reasonable and good faith mistake of fact as to victim's age defense to statutory rape]; *People* v. *Vogel* (1956) 46 Cal.2d 798, 801, 804-805 [299 P.2d 850] [reasonable and good faith mistake of fact regarding divorce from first wife defense to bigamy].)[5]

■ The *Mayberry* defense has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly

---

"(2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

[4]Section 26 provides in part:

"All persons are capable of committing crimes except those belonging to the following classes:

" . . . . . . . . . . . . . . . . . . . . .

"Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

[5]Since *Mayberry*, *supra*, the Courts of Appeal have struggled with the issue of when an instruction on reasonable and good faith but mistaken belief as to consent is required. A variety of approaches have developed, and those most consistent with the spirit of *Mayberry* have been incorporated herein. While we cite certain Court of Appeal opinions for particular propositions, we disapprove of any portions of these opinions that are otherwise inconsistent with the principles announced today.

and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse.[6] In order to satisfy this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent.

In addition, the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a *Mayberry* instruction. (See *People* v. *Bruce* (1989) 208 Cal.App.3d 1099, 1104 [256 Cal.Rptr. 647] [one relying on *Mayberry* defense must produce some evidence of victim's equivocal conduct that led the accused to reasonably believe there was consent]; *People* v. *Romero* (1985) 171 Cal.App.3d 1149, 1156 [215 Cal.Rptr. 634] ["defense must produce some evidence of equivocal conduct by the victim which led him to reasonably believe that there was consent where in fact there was none."].)

The defendant bears the burden of raising a reasonable doubt as to whether he harbored a reasonable and good faith but mistaken belief of consent (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 157; see *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963 [127 Cal.Rptr. 135, 544 P.2d 1335]), "and then only if the prosecution's proof did not of itself raise such a doubt." (*People* v. *Babbitt* (1988) 45 Cal.3d 660, 694 [248 Cal.Rptr. 69, 755 P.2d 253].)

In *Mayberry*, we held that a requested instruction regarding mistake of fact was required when "some evidence 'deserving of . . . consideration'" existed to support that contention. (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 157.) In *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 and fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1], we further explained that a trial court must give a requested instruction only when the defense is supported by "substantial evidence," that is, evidence sufficient to "deserve consideration by the jury," not "whenever *any* evidence is presented, no matter how weak." Thus, in determining whether the *Mayberry* instruction should be given, the trial court must examine whether there is substantial evidence that the defendant honestly and reasonably, but mistakenly, believed that the victim consented to sexual intercourse.

■ Williams asserts that "a successful *Mayberry* defense does not require a jury finding that the defendant's belief was mistaken." However, as

---

[6]Consent for purposes of rape prosecutions is defined as "positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (§ 261.6.)

the language implies, a mistake of fact occurs when one perceives facts differently from how they actually exist. This principle is illuminated by reference to the cases on which *Mayberry* relied. For example, in *People* v. *Vogel, supra,* 46 Cal.2d 798, we held that a reasonable and good faith belief that a former wife had obtained a divorce was a valid defense to a charge of bigamy arising out of a second marriage when the first marriage had not in fact been terminated. (*Id.* at pp. 801, 804-805.) However, the mistake of fact defense would not have been applicable if the first marriage had in fact been terminated. In this situation there is no mistake of fact; rather, the facts as they actually exist preclude a conviction of bigamy. Likewise, in *People* v. *Hernandez, supra,* 61 Cal.2d 529, we held that a reasonable and bona fide but erroneous belief that a woman was at least 18 years of age is a defense to a charge of statutory rape. (*Id.* at pp. 535-536.) This defense differs in kind from the defense that the woman was in fact at least 18 years of age.

Thus, because the *Mayberry* instruction is premised on mistake of fact, the instruction should not be given absent substantial evidence of equivocal conduct that would have led a defendant to reasonably and in good faith believe consent existed where it did not. As one author has explained, under the reasonable mistake defense, " 'a woman is raped but not by a rapist.' " (Berliner, *Rethinking the Reasonable Belief Defense to Rape* (1991) 100 Yale L.J. 2687, 2695, fn. 56.)[7]

Here, there was no substantial evidence supporting a *Mayberry* instruction. Williams testified that Deborah initiated sexual contact, fondled him to overcome his impotence, and inserted his penis inside herself. This testimony, if believed, established actual consent. In contrast, Deborah testified that the sexual encounter occurred only after Williams blocked her attempt to leave, punched her in the eye, pushed her onto the bed, and ordered her to take her clothes off, warning her that he did not like to hurt people. This testimony, if believed, would preclude any reasonable belief of consent. These wholly divergent accounts create no middle ground from which Williams could argue he reasonably misinterpreted Deborah's conduct. (See *People* v. *Burnett* (1992) 9 Cal.App.4th 685, 690 [11 Cal.Rptr.2d 841] [if "defense evidence is unequivocal consent and the prosecution's evidence is of nonconsensual forcible sex, the [*Mayberry*] instruction should not be given"]; *People* v. *Rhoades* (1987) 193 Cal.App.3d 1362, 1369 [238 Cal.Rptr. 909] [neither account of sexual encounter was evidence that defendant mistakenly believed victim consented even though she did not— "sexual act was [either] entirely consensual or the obvious product of force"].) There was no substantial evidence of equivocal conduct warranting an instruction as to reasonable and good faith, but mistaken, belief of consent to intercourse.

---

[7]Hence we reject the conclusion in *People* v. *Hampton* (1981) 118 Cal.App.3d 324, 330 [173 Cal.Rptr. 268] that the *Mayberry* instruction should be given in every case in which "[actual] consent is offered as a defense to a charge of rape."

In finding substantial evidence to support a *Mayberry* instruction, the Court of Appeal relied primarily on three circumstances. First, it noted that Deborah "willingly accompanied [Williams] to the hotel after spending several hours in his company, [and] that she did not object when the hotel clerk handed him a bedsheet." The relevant inquiry under *Mayberry*, however, is whether Williams believed Deborah consented to have intercourse, not whether she consented to spend time with him. To characterize the latter circumstance alone as a basis for a reasonable and good faith but mistaken belief in consent to intercourse is, as noted by Presiding Justice Low's dissent in the Court of Appeal, to "revive the obsolete and repugnant idea that a woman loses her right to refuse sexual consent if she accompanies a man alone to a private place. That is an especially cruel assumption here, where the victim, a homeless woman, may well have wanted nothing more than the relative quiet and comfort of a private room in which to relax and watch television."

Second, the Court of Appeal relied on Williams's testimony regarding the sexual encounter. As explained above, however, this testimony of Deborah's unequivocal behavior was evidence of actual consent, not reasonable and good faith mistake as to consent.

Finally, the Court of Appeal cited the fact that "during the hour they were inside the room the hotel clerk did not hear any screams or other sounds indicating physical violence." As a preliminary matter, the clerk testified that she may have left the hotel office and even the floor while Williams and Deborah were in the room. Furthermore, the clerk's failure to hear Deborah's screams or struggling sheds no light on Williams's state of mind, or whether he misunderstood Deborah's conduct. (See *People* v. *Simmons* (1989) 213 Cal.App.3d 573, 578, 580 [261 Cal.Rptr. 760] [motel employee's testimony that he did not hear screams from room where rape allegedly occurred not evidence in support of defendants' belief in consent]; compare with *People* v. *Anderson* (1983) 144 Cal.App.3d 55, 59-60, 62 [192 Cal.Rptr. 409] [witness present during sexual encounter].) Finally, both Deborah and Williams reported an argument, although at different times, in their accounts of the sexual encounter.[8]

In sum, we find that there was no substantial evidence of equivocal conduct warranting an instruction on reasonable and good faith mistake of fact as to consent to sexual intercourse in this case.

---

[8]The Court of Appeal also emphasized the fact that both the prosecutor and the defense requested the *Mayberry* instruction in the trial court. We note that only the defendant objected to the trial court's refusal to give this instruction. Moreover, the fact that the prosecutor requested such an instruction does not establish that it was required by the evidence, since "[s]uch instructions are commonly requested out of an abundance of caution." (*People* v. *Perez* (1992) 2 Cal.4th 1117, 1130 [9 Cal.Rptr.2d 577, 831 P.2d 1159].) Such caution was particularly warranted here where at least one division of the relevant district Court of Appeal had opined that a *Mayberry* instruction was required whenever a defendant proffered an actual consent defense. (*People* v. *Hampton, supra*, 118 Cal.App.3d at p. 330.)

■ We note for the guidance of the lower courts that there may be cases, as in *Mayberry*, in which there is evidence of equivocal conduct that could be reasonably and in good faith relied on to form a mistaken belief of consent, but also evidence that this equivocal conduct occurred only after the defendant's exercise or threat of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2); *People v. Mayberry, supra,* 15 Cal.3d at pp. 147-148, 156-157 [evidence that victim's equivocal conduct began only after victim endured series of physical assaults and verbal threats]; see *People v. Burnham* (1986) 176 Cal.App.3d 1134, 1142 and fn. 8, 1148 [222 Cal.Rptr. 630] [evidence that wife's equivocal conduct regarding attempted penetration by a canine penis followed husband's admitted severe beating of her]; *People v. Anderson, supra,* 144 Cal.App.3d at pp. 58, 62 [evidence that first victim's equivocal conduct occurred after defendant's assault causing great pain on second victim, and threat to continue assault if first victim did not do as he ordered].) No doubt it would offend modern sensibilities to allow a defendant to assert a claim of reasonable and good faith but mistaken belief in consent based on the victim's behavior *after* the defendant had exercised or threatened "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2) ["Rape is an act of sexual intercourse accomplished . . . [¶] . . . against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."]; see *People v. Barnes* (1986) 42 Cal.3d 284, 302-303 [228 Cal.Rptr. 228, 721 P.2d 110] [rejecting as an element of rape that the victim must resist her attacker and thereby risk additional injury].) However, a trier of fact is permitted to credit some portions of a witness's testimony, and not credit others. Since a trial judge cannot predict which evidence the jury will find credible, he or she must give the *Mayberry* instruction whenever there is substantial evidence of equivocal conduct that could be reasonably and in good faith relied on to form a mistaken belief of consent, despite the alleged temporal context in which that equivocal conduct occurred. The jury should, however, be further instructed, if appropriate, that a reasonable mistake of fact may not be found if the jury finds that such equivocal conduct on the part of the victim was the product of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

## CONCLUSION

We conclude that there was no substantial evidence warranting an instruction on reasonable and good faith but mistaken belief of consent to sexual

intercourse in this case. Accordingly, we reverse the judgment of the Court of Appeal.

Lucas, C. J., Panelli, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur in the judgment. The Court of Appeal reversed the judgment of the superior court convicting defendant after a jury trial of two counts of rape and one count of false imprisonment. Addressing the sole claim on appeal, it concluded that the superior court prejudicially erred when it refused to instruct on the defense of reasonable and honest belief by the defendant regarding the complainant's consent. As will appear, that conclusion was itself erroneous: there was error at trial but no prejudice. Consequently, the judgment must be reversed.

I cannot concur, however, in the majority opinion. Its analysis does not go deep enough. And to the depth it does go, it is unsound.

I

As pertinent here, "Rape is an act of sexual intercourse . . . with a person not the spouse of the perpetrator" "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (Pen. Code, § 261, subd. (a)(2).)

The People, of course, must prove the elements of a crime beyond a reasonable doubt. That is true under section 1096 of the Penal Code. It is also true under the due process clause of the Fourteenth Amendment to the United States Constitution, as construed in *In re Winship* (1970) 397 U.S. 358, 361-364 [25 L.Ed.2d 368, 373-375, 90 S.Ct. 1068].

In *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], in an opinion authored by Justice Richardson for a unanimous court, we recognized a defense to rape "[i]f a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented . . . to engage in sexual intercourse . . . ." (*Id.* at p. 155.) "Penal Code section 20," we explained, "provides, 'In every crime . . . there must exist a union, or joint operation of act and intent, or criminal negligence.' The word 'intent' in section 20 means 'wrongful intent.'" (*Id.* at p. 154, ellipsis in original.) A defendant's reasonable and honest belief in the complainant's consent, we concluded, negatives the element of intent: if he has a belief of this sort, "it is apparent he does not possess the wrongful intent that is a prerequisite . . . to a conviction of . . . rape . . . ." (*Id.* at p. 155.) That "wrongful intent" may simply be described—in accordance with the statutory definition of the

crime as interpreted in the case law—as the intent to engage in an act of sexual intercourse that is in fact unconsented and forcible, either "purposely" (i.e., with a "conscious object to engage in" such an act), "knowingly" (i.e., with "aware[ness]" of the "nature" of the act), or "recklessly" (i.e., with "conscious[] disregard[]" of a "substantial and unjustifiable risk" that the act is unconsented and forcible) (Model Pen. Code, § 2.02).[1] To gain acquittal, the defendant need only raise a reasonable doubt as to his reasonable and

---

[1]Accord, *Frank* v. *Superior Court* (1989) 48 Cal.3d 632, 642 [257 Cal.Rptr. 550, 770 P.2d 1119] (conc. opn. of Kaufman, J.) (the requisite "wrongful intent" is the intent to engage in an act of sexual intercourse "irrespective of or without . . . consent"); *People* v. *Burnham* (1986) 176 Cal.App.3d 1134, 1140 [222 Cal.Rptr. 630] (to similar effect).

In *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], we considered a claim that the superior court prejudicially erred by admitting evidence of prior unadjudicated rapes at the defendant's trial of offenses including rape.

We found no prejudice. But we did indeed find error. The evidence, we reasoned, was not relevant: it was not probative of any disputed issue of consequence. "[T]his case," we stated, "presented no issue of identity." (*People* v. *Tassell, supra,* 36 Cal.3d at p. 88.) At this point, we added in a footnote: "Nor, to keep the record straight, was there any ambiguity about defendant's intent. In *People* v. *Kelley* [(1967) 66 Cal.2d 232 (57 Cal.Rptr. 363, 424 P.2d 947)], we recognized that evidence of other sex offenses 'is admissible in cases where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident. (*Id.* at pp. 242-243.)' [*sic*] Several cases of this nature are noted in [a preceding footnote]. Here, however, there is nothing equivocal or ambiguous about defendant's intent. Whichever version of the facts is believed, defendant intended intercourse. On his evidence, [the complainant] unmistakably consented. On hers, he accomplished the intended act against her will by use of force and threats. Right or wrong, the theory of Justice Reynoso's dissent—that the uncharged offenses were admissible [*sic*] to negative a mistaken but reasonable belief that [the complainant] had consented—is inapplicable to this case, since no such defense was ever suggested." (*People* v. *Tassell, supra,* at p. 88, fn. 7.)

It might perhaps be argued that the *Tassell* footnote implies that the "wrongful intent" required for rape is the intent to engage in an act of sexual intercourse *simpliciter.* To say the least, such an implication would be strained. It would also be erroneous. The intent to engage in an act of sexual intercourse in and of itself is simply not wrongful. Moreover, if the requisite "wrongful intent" is such, "how can reasonable belief there was consent be a defense to a charge of forcible rape?" (*Frank* v. *Superior Court, supra,* 48 Cal.3d at p. 642 (conc. opn. of Kaufman, J.).)

A final observation on the "nature" of the "wrongful intent" required for rape. As we explained in *People* v. *Daniels* (1975) 14 Cal.3d 857: "The terms 'specific' and 'general' intent have been notoriously difficult to define and apply. [Citation.] While both terms have been employed in more than one sense, thereby causing confusion [citations], we have stressed an important temporal difference and have observed: 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " (*Id.* at p. 860, quoting *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].) Rape is classified as a "general intent" crime. (E.g., *People* v. *Hernandez* (1988) 46 Cal.3d 194, 209 [249 Cal.Rptr. 850, 757 P.2d 1013]; *People* v. *Burnham, supra,* 176 Cal.App.3d at p. 1140; *People* v. *Franklin* (1976) 56 Cal.App.3d 18, 27 [128 Cal.Rptr. 94].) The fact that the requisite

honest belief in consent. (*People* v. *Mayberry, supra,* at p. 157.) Put otherwise, to obtain a conviction in such a case, the People must prove the absence of such a belief beyond a reasonable doubt. (See *ibid.*)

## II

The majority conclude that there was not sufficient evidence to support a requested instruction on the defense of reasonable and honest belief by the defendant regarding the complainant's consent. They disagree with the Court of Appeal on this point. They are in error.

To be sufficient for present purposes, evidence must be substantial. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1].) To be substantial, it must allow a reasonable jury to make a determination favorable to the defendant. (*Id.* at p. 684.) Here, it must allow such a jury to entertain a reasonable doubt whether defendant reasonably and honestly believed that the complainant consented.

The evidence in this case was more than sufficient. The majority themselves note that "[Defendant] testified that [the complainant] initiated sexual contact, fondled him to overcome his impotence, and inserted his penis inside herself." (Maj. opn., *ante,* at p. 362.) A jury could have credited this testimony. Had it done so, it could have found that defendant had a reasonable and honest belief in consent. A fortiori, it could have entertained a reasonable doubt on the point.

The majority conclude to the contrary. Their analysis is unpersuasive.

First, and more generally, the majority assert that the reasonable-and-honest-belief defense involves only a *mistaken* belief.

*Mayberry,* however, does not so limit the defense. True, we there recognized the defense under the rubric of "mistake": "Penal Code section 26 recites, generally, that one is incapable of committing a crime who commits an act under a mistake of fact disproving any criminal intent." (*People* v. *Mayberry, supra,* 15 Cal.3d at p. 154.) But we simply did not cabin the defense: "If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented . . . to engage in sexual intercourse"—mistaken or not—"it is apparent he does not possess the wrongful intent that is a prerequisite . . . to a conviction of . . . rape . . . ." (*Id.* at p. 155.)

---

"wrongful intent" is as stated above does not affect the classification. The intent to engage in an act of sexual intercourse that is in fact unconsented and forcible, either purposely, knowingly, or recklessly, does not implicate an "intent to do some further act or achieve some additional consequence" beyond the "proscribed act."

Neither does logic limit the defense. It is not the *mistaken* belief that negatives the requisite "wrongful intent," but simply the *belief itself.* A belief can of course affect an intent. Its ability to do so depends on what its content is—and not on whether it turns out to be well- or ill-founded. As the drafters of the Model Penal Code have explained, "the rule relating to mistake 'is not a new rule; and the law could be stated equally well without reference to mistake.'" (Model Pen. Code & Commentaries, com. to § 2.04, p. 270, quoting G. Williams, Criminal Law: The General Part (2d ed. 1961) p. 173.)

Further, a "mistake" limitation would lead to untenable results.

It would effectively prohibit the defendant to attempt to raise a reasonable doubt about the intent element of rape unless he concedes the no-consent element. In other words, to offer the defense he would have to take the position that he was *mistaken* about the complainant's consent—and thereby admit, at least by implication, that the complainant did not in fact consent. That is illogical. Consent by the complainant and a reasonable and honest belief by the defendant in that consent are altogether compatible. Indeed, they are inseparable in all truly consensual sexual intercourse.

In addition, a "mistake" limitation would virtually bar the jury from entertaining a reasonable doubt about the intent element until it resolves the no-consent element in the People's favor. That also is illogical. The jury is free to acquit the defendant for lack of "wrongful intent" because of a reasonable doubt about his belief in consent. It cannot properly be forced to first determine the no-consent element itself beyond a reasonable doubt.

It is true that the terms "consent" and "mistaken belief in consent" are not commonly used to refer to the mental states of two participants in the same transaction. Thus, if A consents, B can of course *soundly* believe that A consents. By contrast, if A consents, B cannot *mistakenly* believe that A consents because A *actually* consents.

But as explained above, "consent" and "mistaken belief in consent" are simply not at issue. "Consent" and "reasonable and honest belief in consent" *are.* And they are compatible.

Second, and more specifically, the majority assert that the reasonable-and-honest-belief defense requires evidence of "equivocal conduct" on the part of the complainant. (Maj. opn., *ante*, at p. 361.)

Surely, evidence of "equivocal conduct" is *sufficient* for the defense. But it is not *necessary.*

To the extent that the majority imply that the evidence is insufficient as a matter of law when the complainant's conduct "unequivocally" shows consent, they are wrong. As shown, consent by the complainant and a reasonable and honest belief by the defendant in that consent are compatible. The majority suggest that a defendant cannot harbor a belief that proves mistaken when the complainant engages in "unequivocal conduct" showing consent. Not true. "Consent" is defined as "positive cooperation in act or attitude pursuant to the exercise of free will." (Pen. Code, § 261.6.) The complainant's "unequivocal conduct" may appear to the defendant and, indeed, to all the world as "positive cooperation in act or attitude." All the same, such conduct may not, in fact, be "pursuant to the exercise of free will."

To the extent that the majority imply that the evidence is insufficient as a matter of law when the defendant testifies to consent and the complainant testifies to no consent, they are also wrong. Their premise is that, in a credibility contest between the defendant and the complainant, the jury must accept in toto the testimony of one and reject in toto the testimony of the other. Such a view is without basis in either logic or experience—as the majority themselves are compelled to recognize as they approach the end of their discussion. Here, defendant and the complainant each gave testimony that was worthy of belief on some points and not on others. The jury had to credit each person accordingly. It could not have unreservedly believed one and unreservedly disbelieved the other. It could have inferred that once inside the hotel room, the complainant became apprehensive about the situation in which she found herself; she thought her only "choice" was sexual intercourse with great bodily injury if she actively resisted *or* sexual intercourse without such injury if she did not; as a consequence, she engaged in conduct that could have supported a reasonable and honest belief in consent; but she did not, in fact, consent.

Beneath the surface of the majority opinion, there seems a fear that, in a case such as this, a defendant may too easily fabricate a reasonable-and-honest-belief defense through his own false testimony, and should accordingly be denied the defense unless he is supported by corroborating evidence.

Although the threat of fabrication is ever present, a corroboration requirement may not properly be imposed as a prophylactic. The rule is that the testimony of any single witness "is sufficient for proof of any fact." (Evid. Code, § 411.) There is an exception "where additional evidence is required by statute . . . ." (*Ibid.*) The exception's predicate, however, is absent here.

In any event, a corroboration requirement is not called for. The matter might be different if jurors in rape trials were unduly prone to acquittal.

Perhaps they once were. Twenty years ago, it appears, prosecutions for rape were much less successful than those for other major crimes. (*People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 879-880 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845] [citing authorities].) Today, by contrast, they fare as well. (U.S. Dept. of Justice, Sourcebook of Criminal Justice Statistics 1991 (1992) table 5.53, p. 546.) Hence, jurors do not seem unreasonably acquittal-prone in any degree.

There also seems a fear beneath the surface of the majority opinion that the jury might misconstrue or misapply the reasonable-and-honest-belief defense to acquit a defendant contrary to the law and the evidence.

We cannot give effect to such a fear. "We presume that jurors comprehend and accept the court's directions. [Citation.] We can, of course, do nothing else. The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People* v. *Mickey* (1991) 54 Cal.3d 612, 689, fn. 17 [286 Cal.Rptr. 801, 818 P.2d 84].)

More important, we have no basis to harbor such a fear in the first place. As shown, jurors in rape trials do not appear to be unreasonably prone to acquittal.

In sum, defendant had a defense of consent, which was supported by substantial evidence. He also had a defense of no "wrongful intent" via reasonable and honest belief in consent, which also was supported by substantial evidence. These defenses were not inconsistent. Defendant was entitled to the former. He was entitled to the latter as well.[2]

### III

I now turn from the fact of error to its consequences. The question, of course, is this: Does the superior court's erroneous refusal of an instruction on the defense of reasonable and honest belief by the defendant regarding the complainant's consent require reversal of the judgment? The answer, as will appear, is in the negative.

---

[2]I note in passing that the majority gratuitously—and unfairly—criticize the Court of Appeal for what I assume they would call "sexism." They suggest that the lower court held that the complainant's consent to spend time with defendant was sufficient, in and of itself, to support a reasonable and honest belief in her consent to engage in an act of sexual intercourse. That is simply not the case. The Court of Appeal found sufficiency in evidence that "(1) the victim voluntarily accompanied defendant to a downtown hotel that apparently charges by the hour, (2) she voluntarily accompanied defendant to the room after the hotel clerk supplied them with bedding, (3) she fondled his genitals to arouse him and assisted him in the act of intercourse, and (4) following intercourse she demanded payment."

At the outset, I note that the superior court properly instructed the jury as follows. Rape requires "a union or joint operation of act or conduct and a general criminal intent. . . . When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent . . . ." What "the law declares to be a crime" insofar as rape is concerned is "an act of sexual intercourse with a female person who is not the spouse of the perpetrator accomplished against such person[']s will by means of force, violence or fear of immediate and unlawful bodily injury to such person . . . ." The phrase "against . . . will" is defined as "without . . . consent," i.e., without "positive cooperation in an act or attitude as an exercise of free will."

"It is the general rule for error under [California] law that reversal requires prejudice and prejudice in turn requires a reasonable probability of an effect on the outcome." (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1253 [270 Cal.Rptr. 451, 792 P.2d 251].) Similarly, it is the general rule for error under the United States Constitution that reversal requires prejudice and prejudice in turn is presumed unless the government shows that the defect was harmless beyond a reasonable doubt. (See, e.g., *Rose* v. *Clark* (1986) 478 U.S. 570, 576-579 [92 L.Ed.2d 460, 69-471, 106 S.Ct. 3101].)

Commencing the analysis proper, I observe that the erroneous refusal of an instruction on the reasonable-and-honest-belief defense implicates California law only. State law alone requires such an instruction in a proper case, and state law alone is offended by its absence. Defendant argues that the error is of federal constitutional dimension. His predicate is that refusal of the instruction removed the element of intent from the jury's consideration. The record is otherwise. The instructions actually given, especially those quoted above, prove the point.

Next, the erroneous refusal of the instruction is subject to the general rule that reversal requires prejudice. Defendant argues that the error is reversible per se. His predicate here as above is the asserted—but unsupported—removal of the element of intent.

Lastly, the erroneous refusal of the instruction was not prejudicial in this case. In returning a verdict of guilty on each of the two counts of rape, the jury necessarily found under the proper instructions quoted above that defendant intentionally engaged in an act of sexual intercourse that was in fact unconsented and forcible. By implication, it necessarily found that he acted at least recklessly as to consent and force. By further implication, it necessarily found that he acted without a reasonable and honest belief in consent. Such a finding, the record demonstrates, is altogether sound. When,

as here, under proper instructions the jury necessarily and soundly makes a finding adverse to the defendant on an issue erroneously omitted from the instructions, there is no prejudice arising from the omission. (See, e.g., *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720-721 [112 Cal.Rptr. 1, 518 P.2d 913] [implying as much under the California "reasonable probability" standard]; *Carella* v. *California* (1989) 491 U.S. 263, 270-271 [105 L.Ed.2d 218, 224-226, 109 S.Ct. 2419] (conc. opn. of Scalia, J.) [to similar effect under the federal constitutional "reasonable doubt" standard].)

In concluding that reversal was required, the Court of Appeal looked only to the superior court's erroneous refusal of the instruction and overlooked entirely the jury's implicit rejection of its fundamental premise. By so doing, it misstepped—and misstepped fatally.

## IV

For the reasons I have stated—and not those the majority have given—I am of the opinion that the judgment of the Court of Appeal must be reversed.

Accordingly, I concur in the judgment.

**KENNARD, J.,** Concurring.—I agree with the majority that the defendant in this case was not entitled to a jury instruction under *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337] to the effect that a reasonable belief in the victim's[1] consent negates the criminal intent for rape. I also agree that the *Mayberry* instruction is proper only in a limited class of forcible rape cases. It is indeed a rare case in which the evidence would support jury findings that the defendant reasonably believed that the victim consented to sexual intercourse but that, because the victim did not in fact consent, this reasonable belief was mistaken.

According to the majority, a *Mayberry* instruction should be given when the evidence shows "equivocal conduct" by the victim. (Maj. opn., *ante*, p. 362.) By "equivocal conduct" the majority means, presumably, behavior by a nonconsenting victim that might reasonably be misinterpreted as a manifestation of consent. In my view, the majority's "equivocal conduct" test to determine when to give the *Mayberry* instruction is too amorphous a standard to provide useful guidance for the trial courts. Moreover, because in a *Mayberry* situation it is the defendant's state of mind that is at issue, the victim's conduct should not be the only consideration in deciding whether to give the *Mayberry* instruction. I therefore write separately to set forth the narrow circumstances that, in my view, warrant such an instruction.

---

[1]For convenience, I use the term "victim," rather than the more technically correct "alleged victim," to refer to the person whom the accused is charged with raping.

# I

California law defines forcible rape as an act of sexual intercourse with a person not the spouse of the perpetrator "accomplished against [the] person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. . . ." (Pen. Code, § 261, subd. (a)(2).)[2] We have recognized that most rapes are accomplished by the use or threat of force. (See *People* v. *Barnes* (1986) 42 Cal.3d 284, 294-295 [228 Cal.Rptr. 228, 721 P.2d 110].) Indeed, although it was once thought of as a deviant form of sexual behavior, rape is now regarded primarily as an act of violence. (See Estrich, Real Rape (Harv.U. Press 1987) pp. 82-83.)

A determination that the defendant accomplished sexual intercourse by threat or use of force generally precludes a finding by the trier of fact that the victim consented to have intercourse. As one court aptly put it, "[c]onsent [to sexual intercourse] induced by fear is no consent at all." (*People* v. *Hinton* (1959) 166 Cal.App.2d 743, 749 [333 P.2d 822].)

Whether the victim *actually consented* to sexual intercourse, however, is not at issue in a *Mayberry* situation. This court's holding in *People* v. *Mayberry, supra,* 15 Cal.3d at page 155, was that an accused who reasonably and in good faith believed that sexual intercourse was not against the victim's will lacked the criminal intent necessary for forcible rape. In a prosecution for forcible rape, a defendant who raises a *Mayberry* defense challenging the existence of criminal intent does not, by raising that defense, contest the other elements of the statutory definition of forcible rape. This is the reason: The statutory definition of the offense focuses on the victim's frame of mind, asking whether her participation in the sexual act was coerced by threat or use of force, whereas the criminal intent requirement articulated in *Mayberry* focuses on the defendant's mental state, asking whether the defendant held a reasonable belief that the victim's participation was voluntary.

The crux of the *Mayberry* claim is that even though the defendant may have used or threatened force, he nonetheless had a reasonable and good faith belief that the victim consented to sexual intercourse. Thus, evidence showing only that the victim actually consented to the act of intercourse will not support a *Mayberry* claim, although it tends to demonstrate that an essential element of the definition of forcible rape is lacking. To warrant the

---

[2] I do not here address the application of the *Mayberry* defense to those situations chargeable under Penal Code section 261, subdivision (a)(2), in which the evidence shows sexual intercourse induced by "duress" involving threatened "hardship" or "retribution" (see Pen. Code, § 261, subd. (b)) or by "menace" (see *id.*, § 261, subd. (c)).

*Mayberry* instruction, the evidence must be sufficient for a jury to find both of the following: (1) the defendant accomplished the sexual intercourse against the victim's will by the threat or use of force, *and* (2) the defendant believed reasonably and in good faith that the victim voluntarily consented to the act of intercourse.

## II

Under what state of facts could a jury conclude both that the defendant used or threatened force *and* that it was reasonable for him to believe the victim consented to sexual intercourse? Two fact patterns that would support both findings have been proposed in an amicus curiae brief filed in this case by Queen's Bench, a professional organization of women lawyers in the San Francisco Bay area. The first involves evidence that the amount of force used or threatened by the defendant was slight—sufficient to accomplish the sexual intercourse against the victim's will but not so great as to render unreasonable a belief by the defendant that the victim consented notwithstanding the use or threat of force. The second situation involves the rare circumstance in which the evidence would support a reasonable belief by the defendant that the victim consented to his use of force. I agree with Queen's Bench that a *Mayberry* instruction is appropriate in each of these two situations.

I would, however, add a third fact pattern to those proposed by Queen's Bench: when, because of the substantial passage of time between the defendant's use or threat of force and the act of sexual intercourse, the defendant could reasonably believe that the victim's participation in the act of sexual intercourse was not coerced.

Unless the evidence presented during a trial of a forcible rape case falls within one of these three fact patterns, the defendant is not, in my view, entitled to a jury instruction under *People* v. *Mayberry, supra,* 15 Cal.3d 143, that a reasonable and good faith belief in the victim's consent negates the requisite criminal intent for rape.

Here, there was no evidentiary basis for a *Mayberry* instruction. The victim testified that she acquiesced to sexual intercourse shortly after the defendant punched her in the eye and threatened her. According to defendant, however, it was the victim who initiated sexual intercourse, and defendant denied using or threatening force or violence before the intercourse. Thus the evidence at trial was either that defendant used no force, or that he used substantial force immediately preceding the sexual intercourse. This evidence does not fit any of the three fact patterns articulated earlier: there was

no evidence that defendant used only a slight amount of force, or that the victim agreed to defendant's use of force, or that the act of sexual intercourse took place a substantial time after defendant's use or threat of force. Therefore, defendant was not entitled to a jury instruction under *People* v. *Mayberry*, *supra*, 15 Cal.3d 143, that a reasonable and good faith belief in the victim's consent to intercourse would negate the intent for forcible rape. On this basis, I concur in the reversal of the judgment of the Court of Appeal.