Filed 2/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM MEYERS, | H038351 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 1-10-CV177077) |
| v. | |
| BOARD OF ADMINISTRATION FOR THE FEDERATED CITY EMPLOYEES RETIREMENT FUND, | |
| Defendant and Respondent. | |

Plaintiff William Meyers was injured on the job while employed by the City of San Jose (the City). He applied to defendant, the Board of Administration for the Federated City Employees Retirement Fund (the Board) for the City of San Jose, for disability retirement benefits as provided for City employees by the San Jose Municipal Code. The Board denied Meyers's application. Meyers challenged that denial by way of an administrative mandate petition, which the superior court denied. Meyers now appeals from that denial.

We reverse the judgment and direct the trial court to grant Meyers's petition for a writ of mandate and remand the matter to the Board for further proceedings.

## I. BACKGROUND

### A. *Factual Background*

#### 1. *Meyers's Injury, Medical Treatment, and Workers' Compensation Claim*

Meyers began working for the City as an associate construction inspector in 2001. In February 2003, he fell on the job, hitting his back and elbow on the pavement. Meyers

sought treatment for the resulting back and neck pain, and, in August 2003, underwent surgery during which three of his vertebrae were fused together.

Meyers returned to work in December 2003 but continued to experience muscle spasms and back pain for which he took medication and received ongoing treatment. On July 18, 2004, Meyers was transferred to the Department of Transportation (DOT) as a sidewalk inspector. Meyers's back pain increased, and, in October 2004, became so severe that he went to the emergency room.

Meyers filed a worker's compensation claim. In connection with that claim, Meyers was examined by two qualified medical examiners, John Horowitz, D.C., and Richard Abend, D.C. In his October 18, 2004 report, Dr. Horowitz noted that Meyers's new position as a sidewalk inspector required repetitive bending, which had exacerbated his lower back pain. Dr. Horowitz took Meyers off work at that time, noting that Meyers's condition was "persistent and his pain [was] nearly intolerable." Dr. Horowitz's report noted that Meyers may not be able to tolerate the repetitive bending required by his current job as a sidewalk inspector. Dr. Horowitz again examined Meyers on February 23, 2005, and concluded that Meyers could not bend, crawl, crouch, or kneel; lift or carry 25 pounds or more; engage in push/pull activity exerting significant force; or frequently extend or rotate his head and neck. On October 18, 2005, Dr. Horowitz concluded that Meyers could not return to his job as a result of his disability, which Dr. Horowitz concluded was caused by the February 2003 workplace fall.

Dr. Abend concluded in December 2004 that "Mr. Meyers' present disability . . . was a direct result of his industrial injury of February 14, 2003." On November 15, 2005, Dr. Abend concluded that "Meyers has a disability that limits him to semi-sedentary work." Dr. Abend further concluded that Meyers could not "tolerate strenuous activity," "sit for more than 30 minutes without a short break," "stand for more than 15 minutes in one place," "perform any repeated bending or stooping, pushing or pulling, or lifting greater than 15 pounds."

2

Meyers was separated from City service on May 19, 2005.

A letter from a City workers' compensation claims adjuster dated November 10, 2005, informed Meyers that the City "has no modified or alternative work available for you." That conclusion was based on the restrictions imposed by Dr. Horowitz on February 23, 2005.

In April 2006, the State of California Workers' Compensation Appeals Board awarded workers' compensation benefits to Meyers, finding that an industrial injury had caused him to be permanently disabled.

In July 2006, Meyers was examined by John E. Massey, M.D., a certified pain management specialist. Dr. Massey concluded that Meyers suffered from "a chronic pain syndrome" for which he was on "chronic opioids" and required "significant doses of anti-seizure or anti-neuropathic pain medicines." Dr. Massey noted that the likelihood of Meyers returning to work while on those medications was low. In August 2008, Dr. Massey stated his belief that it is "within a medical certainty that [Meyers's] current symptoms are related to his specific industrial injury of February 14, 2003." Dr. Massey further stated that Meyers is "limited to semi-sedentary work and unable to tolerate any kind of strenuous activity."

In 2007, Meyers completed an eight-week functional restoration program at the Bay Area Pain and Wellness Center, where he was treated by Maliheh Massih, M.D. At the completion of that program, Dr. Massih concluded that Meyers could return to work with the following physical limitations: (1) no bending for more than one hour per eight-hour work day, (2) no squatting for more than one hour per eight-hour work day, (3) no kneeling for more than 10 to 30 minutes per hour, (4) no standing for more than 10 to 30 minutes per hour, (5) no lifting more than 20-25 pounds, (6) no sitting more than 20-30 minutes at a time without an opportunity to stand, (7) no standing statically for more than 15 minutes without an opportunity to sit; and (8) no walking more than five hours total per day.

3

### 2. *Meyers's Application for Disability Retirement Benefits*

On March 5, 2005, Meyers applied for service-connected disability retirement benefits. In connection with his application for disability retirement benefits, Meyers was examined by Rajiv Das, M.D., the Board's medical director. In a December 21, 2005 memorandum to the Board, Dr. Das found the cause of Meyers's "significant disability [to be] unclear." Dr. Das concluded that the following work restrictions were appropriate for Meyers: (1) "avoid[ing] repetitive bending and stooping," (2) "avoid[ing] lifting weights greater than 20 pounds," and (3) "be[ing] allowed to . . . stand when seated for more than 15 to 20 minutes."

The Board asked the DOT whether the restrictions set forth by Dr. Das "could have been accommodated at the time" Meyers was separated from City service. In its January 4, 2006 response memorandum, the DOT described Meyers's duties as an associate construction inspector assigned to the sidewalk section. The memorandum then stated that the DOT was "able to accommodate [Meyers] in the Sidewalk Section based on the current work restrictions" imposed by Dr. Das. The memorandum further noted that Dr. Das's "restrictions differ from [Meyers's] previous restrictions from Dr. Horowitz dated 2/23/05, which we were unable to accommodate at the time."

At Meyers's subsequent hearing before the Board, Allen Demers, the return-to-work manager for the City's human resources department, noted that at the time the DOT issued the January 4, 2006 memorandum, Meyers was not eligible to return to work because he had already separated from City service. Therefore, he explained, the conclusion of the January 2006 memorandum was that Meyers "theoretically" could have been accommodated at the time of his separation--May 2005--using Dr. Das's restrictions.

### B. *Procedural Background*

#### 1. *September 2009 Board Hearing and Application Denial*

The Board held an administrative hearing on Meyers's application for service-

4

connected disability retirement benefits on September 10, 2009. Following the hearing, the Board voted to deny Meyers's application. In a written resolution dated December 10, 2009, the Board formally denied the application "on the grounds that [Meyers] has not established that he has a service-connected disability for retirement purposes."

### 2. April 2010 Board Rehearing and Application Denial

At Meyers's request, the Board held a rehearing on April 8, 2010. Following the rehearing, the Board again voted to deny Meyers's application, concluding in a May 13, 2010 resolution that Meyers had not established that he has a service-connected disability for retirement purposes. The Board's resolution contained the following findings:

"6. The medical evidence presented to the Board does not support a finding that Applicant's disability is service connected.

"7. The medical evidence shows that if Applicant were to have continued his employment with the City of San Jose, Applicant would have had work restrictions as follows:

"7.1 Applicant should avoid repetitive bending and stooping;

"7.2 Applicant should avoid lifting weights greater than 20 pounds;

"7.3 Applicant should be allowed the opportunity to stand when seated for more [than] 15 to 20 minutes. . . . [¶] . . . [¶]

"9. The written documentation and the testimony presented at the hearing showed that the requirements of Applicant's position as an Associated Construction Inspector were within Applicant's work restrictions, and that the Department of Transportation was able to accommodate an Associated Construction Inspector with Applicant's work restrictions."

### 3. Meyers's Petition for Writ of Administrative Mandate

Meyers filed a petition for writ of administrative mandate on July 15, 2010, challenging the Board's denial of his application. (Code Civ. Proc., § 1094.5.) On March 6, 2012, following two hearings on the petition, the superior court issued a

5

statement of decision denying the petition. The court concluded that Meyers's injury was service connected, noting that--of Meyers's many doctors--only Dr. Das concluded otherwise and finding his opinion on the matter not to be persuasive. The court concluded that the Board's finding that the injury was not service connected was against the weight of the evidence and constituted error. However, the court agreed with the Board's finding No. 7 regarding Meyers's work restrictions and the Board's finding No. 9 that the DOT could have accommodated those work restrictions. As to accommodation, the trial court relied on the DOT's January 4, 2006 memorandum asserting that it could have accommodated Meyers. The court denied the petition for writ of administrative mandate, reasoning that because Meyers's work restrictions could have been accommodated, he did not qualify for disability retirement benefits.

The court entered judgment against Meyers on April 5, 2012. Meyers timely filed a notice of appeal on May 25, 2012.

## II. DISCUSSION

### A. *Standard of Review*

This case involves a fundamental vested right--a public employee's rights to pension and service-connected disability benefits--and, accordingly, the trial court exercised its independent judgment in examining the administrative decision. (*Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 751.) In reviewing the trial court's denial of the petition for a writ of administrative mandate, we apply the substantial evidence test to the trial court's factual findings. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851.) In doing so, we " 'resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court.' " (*Worthington v. Davi* (2012) 208 Cal.App.4th 263, 277.) We review questions of law, such as the interpretation of local ordinances and municipal codes, de novo. (*Antelope Valley Press v. Poizner*, *supra*, at p. 851.)

### B. *Applicable Municipal Code Provisions*

6

Whether an employee is eligible for service-connected disability benefits is governed by Chapter 3.28 of the San Jose Municipal Code. A retirement plan member is eligible for disability retirement "[i]f the medical reports and other available evidence and information show to the satisfaction of the retirement board that the member is incapacitated for the performance of his duty." (San Jose Mun. Code, § 3.28.1260.) The Municipal Code defines "incapacitated for the performance of duty" to mean "disability of a member, short of death, of permanent or extended and uncertain duration, occurring while such member is an employee of the city in the federated city service of the city, as a result of injury or disease . . . , which renders the member physically or mentally incapable of continuing to satisfactorily assume the responsibilities and perform the duties and functions of the position then held by him and of any other position in the same classification of positions to which the city may offer to transfer him, as determined by the retirement board on the basis of competent medical opinion." (*Id*., § 3.28.1210, subd. A.) A disability is considered "service-connected" where it "arises and results from an injury or disease arising out of and in the course of the federated city service, rendered by the member, for which he is entitled to credit under the provisions of this system." (*Id*., subd. C.)

### C. *Contentions on Appeal*

Here, the trial court concluded that Meyers was not "incapacitated for the performance of duty" because he was physically able to perform the duties of his position as associate construction inspector assigned to the sidewalk section and the DOT could have accommodated his restrictions. On appeal, Meyers challenges certain of the court's factual findings as unsupported by substantial evidence. In particular, he challenges the court's finding regarding his appropriate work restrictions, arguing that the evidence supported more limited restrictions. Meyers also challenges the court's related findings that he was physically able to perform the duties of his position as associate construction inspector assigned to the sidewalk section, and that the DOT could have accommodated

7

his restrictions. Meyers argues that the City was required to *actually* accommodate him, not to merely assert that it could have in theory.

### D. *The Trial Court's Work Restrictions Finding is Supported By Substantial Evidence*

First, we consider whether substantial evidence supports the court's finding that Meyers is subject to the following work restrictions: (1) no repetitive bending and stooping; (2) no lifting weights greater than 20 pounds; and (3) having the opportunity to stand when seated for more than 15 to 20 minutes. Meyers argues that those restrictions are not supported by substantial evidence. We disagree.

The limitation on repetitive bending and stooping is supported by the opinions of Dr. Das, Dr. Abend, and Dr. Massih.[1] The 20-pound weight lifting restriction is supported by the opinions of Dr. Das and Dr. Massih. And the restriction on sitting for extended periods is supported by the opinions of Dr. Das, Dr. Abend, and Dr. Massih.

Meyers argues that he also is limited to semi-sedentary work, as advised by Dr. Abend, Dr. Horowitz, and Dr. Massey. Neither Dr. Das nor Dr. Massih imposed that restriction. The court's implicit finding that Meyers is not limited to semi-sedentary work is supported by substantial evidence--namely, the opinions of Dr. Das and Dr. Massih. In reaching that conclusion, "[w]e emphasize that the [substantial evidence] test is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Howard v. Owens Corning* (1999) 72

---

[1] Contrary to Meyers's suggestion, the trial court was not required to disregard Dr. Das's work restriction opinions merely because it did not credit his opinion as to the cause of Meyers's injury. (*People v. Williams* (1992) 4 Cal.4th 354, 364 ["a trier of fact is permitted to credit some portions of a witness's testimony, and not credit others"].)

Cal.App.4th 621, 631.)

Meyers also relies heavily on Dr. Horowitz's opinion that Meyers could not return to his job as a result of his disability. But the question with respect to disability benefits is whether Meyers can perform the specific duties and functions of his position or a comparable position. Dr. Horowitz's opinion that Meyers cannot return to work, without reference to particular job duties, is not dispositive.

### E. *The Trial Court's Accommodation Finding Is Not Supported By Substantial Evidence*

Next we consider whether the trial court's conclusion that Meyers is not "incapacitated for the performance of duty" is supported by substantial evidence. (San Jose Mun. Code, § 3.28.1210, subd. A.) An individual is not "incapacitated for the performance of duty" for purposes of the Municipal Code if he or she is physically and mentally capable of performing the duties and functions of either (1) his or her current position or (2) "any other position in the same classification of positions to which the city may offer to transfer him." (*Ibid*.) The trial court concluded Meyers was able to perform his current position of associate construction inspector assigned to the sidewalk section, and that--to the extent any of his duties conflicted with his restrictions--the DOT could make accommodations to alleviate the conflict.

We begin with whether substantial evidence supports the conclusion that Meyers was physically able to carry out the duties of associate construction inspector assigned to the sidewalk section. As the trial court noted, the job description itself does not require any lifting, and there is no evidence suggesting otherwise. And while the job description requires some sitting--including driving to field locations--there is no evidence that an associate construction inspector assigned to the sidewalk section would be required to sit without standing for more than 15 to 20 minutes. However, the evidence indicates that the job of sidewalk inspector does require repetitive bending and stooping. In particular, one essential duty is to "[i]nspect sidewalks," which necessarily involves bending or

9

stooping down to sidewalk level.  Dr. Horowitz's October 18, 2004 report confirms that the job requires "repetitive bending."  Thus, substantial evidence does not support the conclusion that Meyers was physically able to carry out the duties of associate construction inspector assigned to the sidewalk section, as that job requires repetitive bending, which he is restricted from performing.

Next, we turn to whether substantial evidence supports the conclusion that Meyers was physically able to perform the duties of "any other position . . . to which the city may offer to transfer him."  (San Jose Mun. Code, § 3.28.1210, subd. A.)  The parties disagree as to the meaning of that language.  Meyers takes the position that "any other position . . . to which the city may offer to transfer him" means "any other position . . . to which the city *in fact offers* to transfer him."  The Board, by contrast, reads the phrase to mean "any other position . . . to which the city *theoretically could have offered* to transfer him."  According to the Board, "[t]he inquiry whether the [DOT] would have been able to accommodate Meyers at the time of separation, i.e. in 2005, was necessarily theoretical" because it was made after the fact, in 2006.

In determining whether a member has a disability within the meaning of the Municipal Code, the Board necessarily must determine *as a matter of fact* whether the member could perform the duties and functions of "any other position in the same classification of positions to which the city may offer to transfer him."  The word theoretical is defined as "relating to what is possible or imagined rather than to what is known to be true or real."  (Merriam-Webster's Online Dict. (2014) <http://www.merriam-webster.com/dictionary> [as of Feb. 26, 2014]; see also (Oxford English Dict. Online (2014) <http://www.oed.com> [as of Feb. 26, 2014] [defining theoretical as "existing only in theory, ideal, hypothetical"].)  Thus, by definition, something that is theoretical is not supported by facts or evidence.  Accordingly, we reject the Board's reading of the Municipal Code as requiring only a theoretical accommodation, as that construction would render the Board's fact-finding mission

10

impossible. That is not to say the Board's inquiry cannot be performed retrospectively. But the Board's findings must be based on evidence showing how the City could and would have accommodated the member. No such evidence exists here.

The Board urges that the DOT's January 4, 2006 memorandum stating that the DOT was "able to accommodate [Meyers] in the Sidewalk Section based on the current work restrictions" constitutes substantial evidence. We disagree. "While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633, fn. omitted.) The evidence must be " 'substantial,' " meaning of " ' "ponderable legal significance," ' " " ' "reasonable in nature, credible, and of solid value . . . ." ' " (*Howard v. Owens Corning*, *supra*, 72 Cal.App.4th at p. 631.) "The focus is on the quality, rather than the quantity, of the evidence." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

The January 4, 2006 memorandum asserts that the DOT could have accommodated Meyers. Lacking any explanation of what the DOT understood accommodation to mean or how it intended to achieve it, the memorandum leaves the reader with many questions. Did the DOT conclude it could have accommodated Meyers because it saw no conflict between the duties of a sidewalk inspector and Meyers's work restrictions (a conclusion we reject above)? Did the DOT determine it could have modified Meyers's duties as sidewalk inspector in view of his restrictions? Did the DOT believe it could have transferred Meyers to another position? If so, what was that position and its associated duties? In our view, the DOT's bald assertion that, in retrospect, it could have accommodated Meyers at the time of his May 2005 separation does not constitute substantial evidence that Meyers was physically able to perform the duties of any DOT position. Accordingly, the trial court's finding that Meyers was not incapacitated for the performance of duty because the DOT could have accommodated

11

his work restrictions is not supported by substantial evidence.

**III.   DISPOSITION**

The judgment is reversed.  The matter is remanded, and the trial court is directed to issue a writ of mandate reversing the Board's denial of disability benefits and remanding the matter for a new hearing on Meyers's disability benefits application. Meyers shall recover his costs on appeal.

_____
                                      Premo, J.

WE CONCUR:

_____
        Rushing, P.J.

_____
          Elia, J.

Meyers v. Board of Administration for the Federated City Employees Retirement Fund
H038351

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-10-CV177077 |
|---|---|
| Trial Judge: | Hon. Erica R. Yew |
| Counsel for Plaintiff/Appellant:<br>William Meyers | Gates Eisenhart Dawson<br>Nicholas G. Emanuel |
| Counsel for Defendant/Respondent:<br>Board of Administration for the<br>Federated Employees Retirement<br>Fund | Office of the City Attorney<br>Richard Doyle, City Attorney<br>Nora Frimann, Assistant City Attorney<br>Margo Laskowska, Senior Deputy City<br>Attorney<br><br>Reed Smith<br>Jeffrey R. Rieger |

Meyers v. Board of Administration for the Federated City Employees Retirement Fund
H038351