[No. S001963. Apr. 20, 1989.]

KENNETH FRANK, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

634

COUNSEL

Stanley Simrin and Simrin & Moloughney for Petitioner.

John M. Sink as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson, Roger Venturi, Gary A. Binkerd, Robert R. Anderson, Edgar A. Kerry, Anthony L. Dicce and Gelacio L. Bayani, Deputy Attorneys General, for Real Party in Interest.

John J. Meehan, District Attorney (Alameda), Thomas J. Orloff and William M. Baldwin, Assistant District Attorneys, Cheryl M. Poncini, Deputy District Attorney, Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Real Party in Interest.

## OPINION

PANELLI, J.—The Court of Appeal, by peremptory writ, directs the trial court to grant petitioner's motion to sever trial on two rape counts. We reverse.

An information filed in the Kern County Superior Court charges petitioner Dr. Kenneth Frank (hereafter Frank) in two counts of rape under Penal Code section 261, subdivision (3).[1] Frank is accused of raping two victims on separate occasions by luring them to his apartment, causing them to drink coffee laced with a drug, and having intercourse with them during the hours they were drugged. He admits having intercourse with the women, denies any use of drugs, and claims they freely consented to intercourse.

Frank moved for severance of trial on the counts. (Pen. Code, § 954.)[2] The trial court denied the motion, and the Court of Appeal denied Frank's petition for writ of prohibition and/or mandate. We granted review and transferred the cause to the Court of Appeal with directions to issue an alternative writ.

Thereafter, applying the severance analysis set out in *People* v. *Smallwood* (1986) 42 Cal.3d 415, 424-433 [228 Cal.Rptr. 913, 722 P.2d 197], the appellate court issued a peremptory writ of mandate, directing the trial court to sever the rape counts. The court first determined that our holding in *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1] compelled the conclusion that the proffered evidence for each count would not be admissible in the trial on the other count if it were separately tried. The court also concluded that defendant was prejudiced by the joinder of the two offenses. We granted the Attorney General's petition for review.

The Court of Appeal "reluctantly" concluded that it was compelled by *Tassell, supra,* 36 Cal.3d 77, to order severance, and it suggested that this is an appropriate case for reconsideration of that holding. We reject the suggestion. *Tassell* and the decisions discussed therein did not involve a trial

---

[1] Section 261 provides in pertinent part: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, administered by or with the privity of the accused."

[2] Section 954 provides in relevant part: "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . . [P]rovided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . ."

Unless otherwise indicated, all future statutory references are to the Penal Code.

court's discretion on motion to sever charged offenses. In our view, therefore, any reconsideration of *Tassell*, if deemed warranted, should await a more appropriate vehicle—specifically, a case involving, as did *Tassell*, the admissibility at trial of other, *uncharged* offenses.

Our concern here is the reliance by the Court of Appeal on *People* v. *Smallwood, supra,* 42 Cal.3d 415, 425, 429 insofar as that case may misplace the burden to show potential prejudice. As we stated in *People* v. *Bean* (1988) 46 Cal.3d 919, 939, footnote 8 [251 Cal.Rptr. 467, 760 P.2d 996], "Misleading language in [*Smallwood*] . . . implies that because prejudice is always presumed when offenses are joined and the evidence is not cross-admissible, the People must establish that the noncross-admissible evidence cannot reasonably affect the verdicts. As this court recognized in *Williams* v. *Superior Court, supra,* 36 Cal.3d 441, 452, and has since reaffirmed in *Ruiz* [*People* v. *Ruiz* (1988) 44 Cal.3d 589 (244 Cal.Rptr. 200, 749 P.2d 854)] and *Balderas* [*People* v. *Balderas* (1985) 41 Cal.3d 144 (222 Cal.Rptr. 184, 711 P.2d 480)], when the question is not admission of evidence of an uncharged offense, but whether severance of charged offenses should be ordered, the defendant carries the burden of clearly showing potential prejudice. *No abuse of discretion in denying severance will be found absent that showing in the trial court.*" (Italics added.)

Applying general principles of law applicable to the severance of counts and recognizing that it is the burden of the defendant to clearly show potential prejudice in the joinder (see *Bean, supra,* 46 Cal.3d 919, 939), we conclude that the trial court did not abuse its discretion in ruling against severance.

FACTS

Since the relative strength of the two counts is a factor in severance, we set out a detailed statement of the facts. The transcript of the preliminary examination, the only evidentiary record before us, reveals the following:

*Count 1.* On Friday, February 7, 1986, Dr. Ilene P., a clinical psychologist and teacher at a local college, went to Todd's Bar. There she saw Frank whom she recognized as a physician she had met at a reception for a local judge and whom she had spoken to on business matters. She approached Frank, joined him, and had two drinks. When she declined his invitation to go to a movie, Frank decided to accompany her to temple. Frank then took Dr. P. to a meeting at the medical center where he worked. After dinner, Dr. P. accepted Frank's invitation to watch a video at his apartment but made it clear she was not interested in sex. They arrived at his apartment about 11:30 p.m.

Dr. P. declined Frank's offer of wine but accepted some Cafe Vienna. She expressed distaste at its sweetness. Frank twice urged her to drink the whole cup which she eventually did. Shortly thereafter, Dr. P. became very drowsy and fell asleep on the couch while watching the video. She remembered the two of them leaving his apartment about 1:30 a.m. but was not fully conscious until 6 p.m. on Saturday, when she was awakened by the ringing of the telephone and, to her surprise, found herself naked in bed with Frank. Frank left shortly thereafter and Dr. P., too groggy to work as planned, slept until 7 a.m. the next morning, Sunday.

Dr. P. cancelled a date for hiking with Frank but agreed to have breakfast with him and told him she suspected she had been drugged or gotten food poisoning. Throughout the day Dr. P. continued to feel tired, nauseous, and "headachy." In the late afternoon, Frank told her that they had had sexual relations and that he put a drug in her coffee thinking it would relax her.

The following morning, Dr. P. could not recall the name of the drug Frank had mentioned. She called his office; he told her it was Ativan. She submitted to a urine and blood test that afternoon; the test was negative for Ativan.

Dr. P. subsequently recalled several things that happened between 1:30 a.m. and 6 p.m. on Saturday: She recalled being in a shower with Frank and being in bed with him. She also remembered Frank lying on top of her with his penis in her vagina.

When police investigated Dr. P.'s complaint, Frank admitted being with her but denied any use of drugs. He admitted using Cafe Vienna with tranquilizers to quiet his dogs and put them to sleep. Cafe Vienna was seized from Frank's apartment with his consent, but tested negative for Ativan. There were no dogs in the apartment.

*Count 2.* On October 12, 1985, Ms. Beverly R., a student at San Joaquin Valley College, and a female friend went to a local bar for a glass of wine. About 2:20 a.m. they went to another bar where the friend introduced Ms. R. to Frank and his brother. Shortly thereafter Frank agreed to drive Ms. R. home but stopped first at his apartment "to get something." At Frank's suggestion, they smoked a pipeful of marijuana. When Ms. R. commenced coughing, Frank fixed her a drink that tasted like coffee but was very sweet and which he told her contained cognac.

A half hour later Ms. R. began to feel dizzy; she told Frank she was ill and wanted to go home. Frank asked her how much she weighed; she told

him. Her vision became blurred and she fell over, striking her head on the arm of the couch. She felt herself being carried toward the bedroom. She then lost consciousness. It was about 4 a.m. on October 13.

Ms. R. was shaken awake by Frank at 7 a.m. on October 14. She was in bed with him, naked; the sheets were covered with menstrual blood; she had vaginal pain; and semen was running down her legs. She was unable to recall anything that happened during the 27-hour period between the time she passed out and the time Frank awakened her.

Ms. R. asked Frank if they had had intercourse, and he told her that they had and that she enjoyed it. He said he had given her a drug called Ativan to put her mind to sleep.

A month after the incident, Ms. R. went to a doctor to make sure she did not have venereal disease but did not report the incident to police until three months after the incident because she was afraid of Frank. She testified that he had threatened her.

Ativan, the drug Frank told both victims they had ingested, is normally prescribed for anxiety or insomnia. A large dose can cause an extended period of unconsciousness. Alcohol adds to this effect. Ativan's half life in the human body is about 18 hours. A sensitive blood or urine test should be able to detect the residue from a large dose of Ativan taken two and a half days earlier.

The trial court denied Frank's motion to sever trial on the two counts, ruling that the offenses were cross-admissible and that there was no prejudice to Frank in the joinder.[3]

## DISCUSSION

Section 954 authorizes joinder of offenses of the same class. The two counts of rape are of the same class, and Frank concedes that the statutory requirements of joinder are satisfied in this case. He argues, however, that severance is required "in the interest of justice" and for good cause shown. (§ 954.)

■ Inasmuch as the statutory requirements of joinder are clearly met, Frank can predicate error only on a clear showing of potential prejudice.

---

[3] In denying the motion, the trial court stated: "Even if the Court were to sever the two counts for trial, the non charged occurrence would be admissible to show the unusual method in which these rapes were carried out. Several of the specific issues listed in Evidence Code 1101(b) would be applicable (intent, plan, knowledge, or absence of mistake or accident, or, specifically, absence of consent)."

(*Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 447 [204 Cal.Rptr. 700, 683 P.2d 699].) The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial. Thus, refusal to sever may be an abuse of discretion where "(1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all; and (4) any one of the charges carries the death penalty." (*People* v. *Balderas* (1985) 41 Cal.3d 144, 173 [222 Cal.Rptr. 184, 711 P.2d 480].)

■ While the first criterion—cross-admissibility—can be dispositive when it is determined that the charged crimes would be cross-admissible at separate trials, the trial court's discretion under section 954 to deny severance is broader than its discretion to admit evidence of uncharged crimes under Evidence Code section 1101 because additional factors favor joinder. Trial of the counts together ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials. (*People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752]; *Coleman* v. *Superior Court* (1981) 116 Cal.App.3d 129, 138-139 [172 Cal.Rptr. 86].)

■ The burden placed on the parties differs substantially depending on whether the trial court is asked to sever properly joined offenses or is asked to admit evidence of an uncharged offense. We explained in *People* v. *Bean, supra,* 46 Cal.3d 919, 938: "In cases in which the evidence to be introduced related to an *uncharged* offense the People, as the proponent of the evidence, bear the burden of persuading the judge that the potential prejudice from the jury becoming aware of the uncharged offense is outweighed by the probative value of the evidence. This is proper because evidence of uncharged offenses is generally inadmissible. (Evid. Code, § 1101; *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1136 [240 Cal.Rptr. 585, 742 P.2d 1306].) Admission of the evidence involves, inter alia, the danger of confusing the issues, introducing collateral matters, or tempting the jury to condemn defendant because he has escaped adequate punishment in the past. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 317 & fn. 18 [165 Cal.Rptr. 289, 611 P.2d 883].) It is therefore appropriate, when the evidence is of an uncharged offense, to place on the People the burden of establishing that the evidence has substantial probative value that clearly outweighs its inherent prejudicial effect. . . .

"The burden is reversed, however, when the offense to which the evidence is relevant is a *charged offense,* properly joined with another for trial.

The prosecution is entitled to join offenses under the circumstances specified in section 954. The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. (*People* v. *Ruiz* (1988) 44 Cal.3d 589, 605 [244 Cal.Rptr. 200, 749 P.2d 854]; *People* v. *Balderas* (1985) 41 Cal.3d 144, 173 [222 Cal.Rptr. 184, 711 P.2d 480].) When the offenses are joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to an offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible may be considered as a factor suggesting possible prejudice, but countervailing considerations that are not present when evidence of uncharged offense is offered must be weighed in ruling on a severance motion. The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice." (46 Cal.3d at pp. 938-939.)

■ Keeping in mind that, in evaluating the merits of a motion to sever, our consideration is limited to "the showings then made and the facts then known" (*Balderas, supra,* 41 Cal.3d at p. 171), we turn to the proceedings in the trial court.

Before the trial court, defense counsel argued that the counts would not be cross-admissible in separate trials because there were no issues of identity, of accident or mistake, of knowledge, or of plan: "There is one issue and one issue only. Either they are lying or he is lying, and that's it. That's what this case is all about, credibility, and nothing more." He stated that there would be virtually no joint witnesses, aside from the expert and perhaps one policeman, and that the sole reason for joinder was to bolster the credibility of one victim by the testimony of the other. He asserted, "We have prejudice here," but could point to nothing but the fact of joinder—that Frank faced two charges instead of one.

The prosecution relied on the statutory preference of joinder, reviewed the criteria for assessing potential prejudice, and argued that the cases were cross-admissible at separate trials, that both cases were of equal weight, strong cases presenting two coherent professional woman, and that neither case was particularly inflammatory.

The trial court found that the evidence on the joined charges would have been admissible in separate trials and, apparently on the assumption that any potential for prejudice was thereby dispelled, denied the motion without discussing any of the other factors outlined in *Williams, supra,* 36 Cal.3d at page 452 or *Coleman, supra,* 116 Cal.App.3d at page 139 to be

considered in ruling on the request for separate trials. The Court of Appeal, on the other hand, concluded the counts would not be cross-admissible and found potential prejudice in the failure to sever. Our assessment of potential prejudice differs from that of the Court of Appeal.

After our decision in *Williams, supra,* 36 Cal.3d 441, we have made clear on several occasions that cross-admissibility is not the sine qua non of joint trials. (See *Balderas, supra,* 41 Cal.3d at pp. 172-173; *People v. Ruiz* (1988) 44 Cal.3d at pp. 589, 606 [244 Cal.Rptr. 200, 749 P.2d 854]; *Bean, supra,* 46 Cal.3d at p. 938; also *People v. Poggi* (1988) 45 Cal.3d 306, 321 [246 Cal.Rptr. 886, 753 P.2d 1082]; *People v. Walker* (1988) 47 Cal.3d 605, 623 [253 Cal.Rptr. 863, 765 P.2d 70].) ■ Whether charged counts are cross-admissible in separate trials is only one of the factors to be considered in determining whether potential prejudice requires severance, and in this case we do not have to determine whether the rape counts would be cross-admissible in separate trials, for we conclude that, based on all the criteria, Frank has not met his burden to show potential prejudice and that the trial court did not err in denying the motion to sever.

This is not a case in which the evidence of the defendant's guilt on one of the joined offenses is weak, while evidence on the other was strong. The offenses appear to be of relatively equal strength. The prosecution's evidence, as is frequently the case when rape is the charge, consists primarily of the testimony of the victims. Frank's concession of identity adds significantly to the prosecution's case. The victims, whose credibility will be a matter for the jury, appear to be equally coherent, and neither case can be described as weak. Further, neither offense is particularly inflammatory in comparison with the other. Combining the above considerations with the often-stated benefits of joinder (see *Bean, supra,* 46 Cal.3d at pp. 939-940), we conclude that Frank has not made an adequate showing of potential prejudice and that the trial court did not abuse its discretion in denying severance.

The judgment of the Court of Appeal is reversed. The cause is remanded to the Court of Appeal with directions to discharge the alternative writ, deny the petition for writ of mandate, and remand to the trial court.

Lucas, C. J., Mosk, J., Eagleson, J., Kaufman, J., and Arguelles, J.,* concurred.

KAUFMAN, J.—I concur fully in the majority opinion. I write separately to address the assertion in the dissenting opinion of Justice Broussard that

---

* Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

the two alleged crimes would not be cross-admissible and that denial of the severance motion was prejudicial to defendant because the "similarity [of the two charged crimes] is not probative as to any legitimate issue." Both these conclusions are demonstrably incorrect.

Evidence of the two charged crimes (rape where the victim was "prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, administered by . . . the accused" [Pen. Code, § 261, subd. (3)]) would have been cross-admissible even had there been separate trials. Evidence Code section 1101, subdivision (b), makes it clear that evidence of another crime is not inadmissible when relevant to prove some disputed fact, such as intent, preparation or plan. (Accord: *People* v. *Thompson* (1980) 27 Cal.3d 303, 314-315 [165 Cal.Rptr. 289, 611 P.2d 883]; *People* v. *Schader* (1969) 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841].)

Here, there can be no doubt that intent is in issue as to each charge. Indeed, intent is practically the only issue. Defendant will admit his presence; indeed, he will no doubt admit intercourse. His only defense will be that the victim in each case consented or that he had a reasonable belief that she consented. The victim in each case claims that she was prevented from resisting, i.e., not consenting, by drugs administered to her by defendant.

The majority in *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], was clearly mistaken in asserting that intent was not in issue in that case because "[w]hichever version of the facts is believed, defendant intended intercourse." (*Id.,* at p. 88, fn. 7.) Of course, he intended intercourse, but that was not the intent at issue. The intent at issue was the intent to have intercourse irrespective of or without the consent of the victim—i.e., by the use of force or fear. If that was not the intent required, how can reasonable belief there was consent be a defense to a charge of forcible rape? (See *People* v. *Mayberry* (1975) 15 Cal.3d 143, 155 [125 Cal.Rptr. 745, 542 P.2d 1337].) That is what Justice Reynoso tried so hard to explain in his concurring and dissenting opinion in *Tassell* and his logic is irrefutable. (36 Cal.3d at pp. 92-94.) *Tassell* should be overruled on this point and I trust it will be in an appropriate case.

So, here, the intent at issue is not defendant's intent to have intercourse but to have nonconsensual intercourse after the victim in each case was drugged to prevent her resisting. Defendant, of course, denies any such intent. The similarity of the crimes is striking; they allegedly each involved a plan or scheme to get the victim in a secluded social situation, drug her and then have intercourse with her when she could not resist because of the drug. The two crimes were "signature" crimes, material not to the undisputed fact of identity, but to the disputed issue of intent. And they would

clearly be cross-admissible for that purpose. (Evid. Code, § 1101, subd. (b); *People* v. *Thompson, supra,* 27 Cal.3d 303, 314-315; *People* v. *Mayberry, supra,* 15 Cal.3d 143, 155-156.)

**BROUSSARD, J.**—I dissent. I agree with the majority that when we are confronted with the question whether trial of offenses of the same class should be severed, the cross-admissibility of the offenses in separate trials is not the sine qua non of the analysis. Nonetheless, cross-admissibility is important in determining the ultimate question, whether joint trial would be unduly prejudicial to the defendant. As we said in *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 448 [204 Cal.Rptr. 700, 683 P.2d 699]: "The initial step in any review of a motion to sever is to examine the issue of cross-admissibility of evidence." The majority err when they fail to undertake this analysis and consider only the other factors enumerated in *Williams*.

The Court of Appeal was right when it determined that it and the trial court were bound by our decision in *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], and that under that decision the charged crimes would not be cross-admissible. It was also right in concluding that joint trial would be prejudicial to the defendant. As it explained, the crucial issue was credibility, and the credibility of the complaining witnesses is not overwhelming. In such a credibility battle, the similarity of the charges will prejudice defendant, though the similarity is not probative as to any legitimate issue. I would affirm the judgment of the Court of Appeal.

Petitioner's application for a rehearing was denied June 1, 1989. Broussard, J., was of the opinion that the application should be granted.