135 Cal.Rptr.2d 917 (2003)
109 Cal.App.4th 1338
The PEOPLE, Plaintiff and Respondent,
v.
Jose Pablo HERNANDEZ et al., Defendants and Appellants.
No. B150342.
Court of Appeal, Second District, Division Three.
June 23, 2003.
Review Granted September 10, 2003.
*919 Susan K. Keiser, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant Jose Pablo Hernandez.
Jill Lansing, Los Angeles, under appointment by the Court of Appeal, for Defendant and Appellant Jonathan Fuentes.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Robert F. Katz, Supervising Deputy Attorney General, and Lauren E. Dana, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
*918 KLEIN, P.J.
Jose Pablo Hernandez and Jonathan Fuentes appeal the judgments entered after conviction by jury of robbery committed for the benefit of a criminal street gang in which Hernandez personally used a dangerous or deadly weapon. (Pen. Code, §§ 211, 186.22, subd. (b)(1), 12022, subd. (b)(1).)[1] The trial court sentenced Hernandez and Fuentes each to a term of 13 years in state prison. We affirm.
In the published portion of the opinion, we conclude the trial court should have bifurcated the trial of the criminal street gang enhancement from the trial of the underlying offenses. However, appellants cannot demonstrate prejudice and reversal is not required. The unpublished portion of the opinion rejects various claims of instructional error.

*920 FACTUAL BACKGROUND

1. Prosecution's evidence.

a. The robbery of Blanca Rodriguez.

On August 15, 2000, at approximately 8:00 p.m., Blanca Rodriguez was sitting with Armen Stepanyan in a Honda parked in front of Rodriguez's residence on Doty Avenue in Hawthorne. Hernandez and Fuentes approached the passenger side of the Honda and asked Rodriguez for a cigarette. Rodriguez handed Hernandez a cigarette through the window of the Honda, but Hernandez said, "I need another cigarette. You better give me another cigarette...." When Rodriguez indicated she had no more, Hernandez demanded a dollar.
At this point, Rodriguez was afraid. Hernandez said, "[Y]ou don't know who you are dealing with. You are dealing with Hawthorne Little [Watts]...." Rodriguez suspected Hernandez was referring to a gang. Hernandez said if they did not get money, they were going to take the Honda. Fuentes and Hernandez opened the passenger door and pulled Rodriguez from the Honda. Fuentes grabbed Rodriguez by the neck, choked her and took her necklace while Hernandez pointed a knife at her neck below the ear. Rodriguez thought she was going to die. Rodriguez saw Stepanyan obtain a wooden stick from the trunk of the Honda and challenge the attackers. Rodriguez screamed, "Somebody call 911." Fuentes and Hernandez looked at each other, then ran from the scene.
Stepanyan's testimony differed from Rodriguez's testimony in that he recalled Fuentes reached into the Honda and grabbed Rodriguez's necklace before Rodriguez was pulled from the Honda.
Rodriguez's roommate heard Rodriguez scream, looked outside and saw one male fighting with Rodriguez and another fighting with Stepanyan. City of Hawthorne police officers detained Hernandez and Fuentes, in separate incidents, shortly after the robbery. Hernandez ran from one second story roof to another and jumped to the ground to avoid one officer. Fuentes attempted to flee on a bicycle from another officer. After the officer forcibly removed Fuentes from the bicycle, Fuentes gave the officer a false name.
Rodriguez identified Fuentes and Hernandez in field show-ups on the evening of the robbery. Stepanyan identified Fuentes in a photographic lineup conducted a few days later. Each repeated their respective identifications at trial.

b. Gang evidence.

Hawthorne Police Detective Peter Goetz testified at trial as an expert with respect to the allegation the charged offenses had been committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1). Goetz indicated Little Watts is the largest Hispanic gang in Hawthorne with approximately 275 members. Goetz interviewed Hernandez on the street with other Little Watts gang members in March of 2000. Goetz took a picture of Hernandez and his associates making gang signs. Hernandez admitted gang membership and said his Little Watts moniker was Smiley.
Geotz interviewed Fuentes on the street in 1997. Fuentes admitted membership in the 106 clique of the 18th Street gang and said his moniker was Looney. In 1997, Fuentes had no tattoos. However, Fuentes now has a tattoo of the number 18 that covers nearly his entire back and has West Side tattooed across his stomach. Eighteenth Street is the largest gang in California and it is "continually expanding throughout the United States." The 106 clique of the gang is located just north of Doty Avenue. The 106 clique and Little *921 Watts appear to have commenced an association in July or August of 2000.
Goetz explained that gang members reveal the name of their gang during the commission of crimes because they want the victims to know who committed the offense in order to gain respect for the gang, to instill fear in the community and to increase their own level of respect within the gang. The 18th Street gang has been known to permit smaller gangs to take credit for joint gang activities. By working together, 18th Street and Little Watts expand their alliances and territory. In the event of a gang war, each gang would be able to call upon a larger number of members. Goetz testified "committing] ... crimes is ... what gang members do. They are not law[ ] abiding, citizens. They are criminals." Goetz opined gang members commit crimes to "buy dope, and to purchase weapons to commit more crimes or defend their territory."
In order to show the pattern of criminal activity required by section 186.22, subdivision (b)(1), the People introduced certified docket sheets which indicated two members of Little Watts had been convicted of driving a vehicle without the owner's consent in March 2000, and another suffered a sustained juvenile petition for driving a vehicle without the owner's consent in October of 1999.

2. Disposition of the charges.

The trial court dismissed count 2, attempted carjacking (§§ 664/215, subd. (a)), at the close of the People's evidence. The jury convicted Fuentes and Hernandez of robbery of Rodriguez committed for the benefit of a criminal street gang in which Hernandez personally used a dangerous or deadly weapon.

CONTENTIONS
Fuentes and Hernandez contend the trial court erroneously refused to bifurcate the trial of the criminal street gang enhancement from the trial of the underlying offenses. They also claim the trial court committed various instructional errors.

DISCUSSION

1. The trial court abused its discretion in denying the request to bifurcate the criminal street gang enhancement from the underlying offenses; however, on this record appellants cannot show prejudice.

a. Background.

In 1988, California passed the Street Terrorism Enforcement and Protection Act (the STEP Act). The STEP Act, inter alia, established enhancements for felonies committed for the benefit of, at the direction of, or in association with, a criminal street gang. (§ 186.22, subd. (b)(1).) To prevail on a criminal street gang enhancement allegation, the People must show the defendant acted with the specific intent to promote, further, or assist in any criminal conduct by gang members and that the gang engaged in a pattern of criminal activity, which may be demonstrated by proof of two or more convictions of 25 possible predicate offenses enumerated in section 186.22, subdivision (c). These predicate offenses range in seriousness from unlawful homicide to driving a vehicle without the owner's consent.
The term of the enhancement imposed under section 186.22, subdivision (b) is two, three or four years. (§ 186.22, subd. (b)(1)(A).) However, if the underlying offense is a serious felony as defined in section 1192.7, the term of the enhancement is five years and, where the underlying offenses is a violent felony as defined in section 667.5, such as robbery, the term is 10 years. (§ 186.22, subd. (b)(1)(B), (C.)

b. Appellants' claim of error.

In denying the appellants' pre-trial motion to bifurcate the criminal street gang *922 enhancement from the underlying offenses, the trial court indicated evidence of gang membership necessarily would be admitted at trial because Hernandez mentioned Hawthorne Little Watts at the time of the offense and the additional prejudice that might flow from a joint trial was not sufficient to warrant bifurcation of the enhancement.
On appeal, Fuentes and Hernandez contend the trial court's refusal to bifurcate was error. Fuentes notes the robbery of Rodriguez was not gang related in that neither Rodriguez nor Stepanyan belonged to a gang. (Cf. People v. Martin (1994) 23 Cal.App.4th 76, 81, 28 Cal.Rptr.2d 660.) Thus, the only gang evidence that would have been admitted, had the enhancement been bifurcated, would have been Hernandez's reference to Hawthorne Little Watts at the time of the robbery. Fuentes asserts bifurcation would have prevented Detective Goetz from testifying about Fuentes's gang tattoos and gang membership and that gang members, in general, are criminals who commit crimes to "buy dope, and to purchase weapons to commit more crimes or defend their territory." Hernandez argues the "disproportionate use of gang evidence to prove a straightforward robbery created a trial atmosphere that deprived appellant of ... fundamental fairness."

c. The trial court has discretion to bifurcate criminal street gang enhancement allegations.

Section 186.22, subdivision (b), does not require, or even address, bifurcation of criminal street gang enhancements from the trial of the underlying offense. (People v. Martin, supra, 23 Cal.App.4th at p. 81, 28 Cal.Rptr.2d 660.)[2] However, the same is true of statutes providing for sentence enhancements based on prior conviction allegations. Nonetheless, prior conviction allegations routinely are bifurcated based on section 1044, which grants the trial court broad discretion to control the conduct of a criminal trial "`with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.' [Citation.]" (People v. Calderon (1994) 9 Cal.4th 69, 75, 36 Cal.Rptr.2d 333, 885 P.2d 83; People v. Cline (1998) 60 Cal.App.4th 1327, 1333-1334, 71 Cal. Rptr.2d 41 [People's request for bifurcation of prior conviction allegations properly granted to avoid the risk of jury nullification in a case prosecuted under the Three Strikes law].)
Calderon, the leading case on bifurcation of prior conviction allegations, concluded the risk of undue prejudice posed by the admission of evidence of a prior conviction, considered against the minimal inconvenience generally caused by a separate trial of the prior conviction allegation, frequently will militate in favor of granting a defendant's timely request for bifurcation. (People v. Calderon, supra, 9 Cal.4th at p. 79, 36 Cal.Rptr.2d 333, 885 P.2d 83.)
However, a trial court is not required to bifurcate a prior conviction allegation if the defendant will not be unduly prejudiced by having the truth of the alleged prior conviction determined in a unitary trial. (People v. Calderon, supra, 9 Cal.4th. at p. 72, 36 Cal.Rptr.2d 333, 885 *923 P.2d 83.) The most common situation in which the defendant will not suffer undue prejudice is when the fact of the prior conviction will be presented to the jury in a trial on guilt alone, when it is "relevant to prove matters such as the defendant's identity, intent, or plan...." (Id. at p. 78, 36 Cal.Rptr.2d 333, 885 P.2d 83.)
Martin, a case involving shots fired at individuals believed to be rival gang members, concluded that analogy to prior conviction allegations was not appropriate when determining whether to bifurcate a criminal street gang allegation because evidence of a prior conviction is separate and unrelated to the underlying crime. The criminal street gang enhancement in Martin was proved by "the same witnesses (gang members) and much of the same evidence used to prove the" circumstances, motive and intent of the underlying homicide. (People v. Martin, supra, 23 Cal. App.4th at p. 81, 28 Cal.Rptr.2d 660.) Because evidence of gang motive for the homicide was introduced at the trial of the underlying felony, Martin concluded, on the facts presented there, that "[t]here was no need for, and in fact, no reasonable way to bifurcate the enhancement allegation." Thus, the defendant would not be unduly prejudiced by a joint trial. (Id. at p. 82, 28 Cal.Rptr.2d 660.)[3]
Martin also suggested criminal street gang enhancements routinely may be tried jointly with the underlying offense because proof of the gang enhancement requires proof the defendant had the specific intent to promote, further or assist a criminal street gang at the time of the underlying crime. Martin noted a criminal street gang enhancement, in this respect, is similar to the enhancements defined by section 12022.4 (furnishing a firearm to another during commission of a felony for the purpose of aiding, abetting or enabling that person to commit a felony), section 12022.6 (taking property in the commission of a felony of a certain value with the intent to cause such taking), section 12022.7 (intentional infliction of great bodily injury), or section 12022.9 (knowingly inflicting injury resulting in termination of a pregnancy), all of which are tried jointly with the underlying offense. (People v. Martin, supra, 23 Cal.App.4th at p. 81, 28 Cal. Rptr.2d 660.)
However, proof of the mental state required for the gang enhancement frequently is shown by expert gang testimony that is unrelated to the underlying offense. Further, the mental state required for the criminal street gang enhancement is not an element of any substantive offense except participating in criminal street gang activity, an offense that was created by the STEP Act. (See § 186.22, subd. (a).)[4] Thus, the fact the criminal street gang enhancement involves a mental state held at the time the offense is committed does not appear to be a valid basis, without more, upon which to deny bifurcation in *924 every instance. Because Martin's rationale appears to be overbroad in this respect, Martin's result appropriately is limited to its facts, a gang related shooting, that necessarily involved evidence of gang motivation.

d. Analogy to motions for severance a more practical model.

Comparison to prior conviction allegations is useful but limited because a prior conviction involves a single discrete fact. Once the fact of the prior conviction becomes known to the jury, there is no longer any reason to try the prior conviction allegation separately. Proof of a criminal street gang enhancement, unlike a prior conviction allegation, involves an array of facts, many of which are irrelevant to proof of the underlying offense. Accordingly, in ruling on a motion for bifurcation of a criminal street gang enhancement, the better approach would be to weigh and consider all the relevant factors before determining whether a unitary trial of the offense and the enhancement is consistent with the defendant's right to a fair trial.
A more reasoned paradigm for the exercise of a trial court's discretion is found in the criteria applied in ruling on a motion for severance. The Supreme Court in Williams v. Superior Court (1984) 36 Cal.3d 441, 448-450, 204 Cal.Rptr. 700, 683 P.2d 699, established four principal criteria for evaluating a claim of prejudice from the denial of a severance motion: (1) whether evidence of the joined charges is cross-admissible; (2) whether the joined charges are of such a nature that one or more of them is so inflammatory as to prejudice the jury's consideration of the remaining charge or charges; (3) whether a weak charge has been joined with a stronger case that provides "spillover" strength to the weak charge; and, (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.[5] (People v. Balderas (1985) 41 Cal.3d 144, 173, 222 Cal.Rptr. 184, 711 P.2d 480; accord People v. Mendoza (2000) 24 Cal.4th 130, 161, 99 Cal.Rptr.2d 485, 6 P.3d 150; Frank v. Superior Court (1989) 48 Cal.3d 632, 638-639, 257 Cal.Rptr. 550, 770 P.2d 1119.) Application of these criteria is a highly individualized exercise, necessarily dependent upon the particular circumstances of each individual case. (Williams v. Superior Court, supra, 36 Cal.3d at p. 452, 204 Cal.Rptr. 700, 683 P.2d 699.)
The first factor, cross-admissibility of evidence, is most significant because, if gang enhancement evidence would have been admissible in a separate trial on the underlying charges, "`"any inference of prejudice is dispelled."'" (People v. Cunningham (2001) 25 Cal.4th 926, 985, 108 Cal.Rptr.2d 291, 25 P.3d 519; People v. Bradford (1997) 15 Cal.4th 1229, 1315-1316, 65 Cal.Rptr.2d 145, 939 P.2d 259.) Cross-admissibility concerns whether evidence of each of the joined charges would be admissible, under Evidence Code section 1101, in separate trials. (People v. Balderas, supra, 41 Cal.3d at pp. 171-172, 222 Cal.Rptr. 184, 711 P.2d 480.) Evidence Code section 1101, subdivision (b) allows the admission of evidence that is relevant to prove some fact, other than the disposition to commit the crime, such as, motive, opportunity, intent, preparation, plan, identity or knowledge. (Evid.Code, 1101, subd. (b).)
In making the determination of cross-admissibility, the trial court compares the gang evidence that would be admissible at a trial of the underlying offense with the gang enhancement evidence that is relevant only to prove the criminal *925 street gang enhancement. In determining what gang evidence is admissible at a separate trial, the trial court is guided by the familiar principle that gang evidence may have a highly inflammatory impact on a jury and creates the risk the jury will infer guilt and criminal disposition merely from gang membership. (People v. Champion (1995) 9 Cal.4th 879, 922, 39 Cal.Rptr.2d 547, 891 P.2d 93; People v. Cox (1991) 53 Cal.3d 618, 660, 280 Cal.Rptr. 692, 809 P.2d 351.) Therefore, gang evidence should be admitted to prove the accused committed the underlying offense only after carefully balancing the probative value against the possible prejudice as required under Evidence Code section 352. (People v. Cardenas (1982) 31 Cal.3d 897, 904-905, 184 Cal.Rptr. 165, 647 P.2d 569.)
If the trial court finds the gang evidence admissible at the trial of the underlying offense includes the most inflammatory aspects of the gang enhancement evidence, then the evidence related to the criminal street gang enhancement is cross-admissible and any inference of prejudice is dispelled. In such cases, denial of the request for bifurcation is proper. Cases like Martin fall into this category. However, as proof of the criminal street gang enhancement becomes more attenuated from the offense itself, the extent to which the evidence is cross-admissible decreases, militating against a unitary trial. In such cases the remaining criteria are considered.

e. Application of the remaining Williams criteria.

The second criterion, addressing whether the gang enhancement is so inflammatory as to prejudice the jury's consideration of the underlying charge, requires consideration of the nature of the evidence the People will introduce to prove the enhancement. This includes the nature and gravity of the predicate offenses used to prove the existence of a criminal street gang, whether the defendant personally committed the predicate offenses, evidence related to the defendant's gang moniker or tattoos and the prejudicial impact of gang expert testimony. As was seen in this case, the gang expert testified gang members are criminals who commit serious and violent crimes as a way of life.
The third Williams criterion, as modified for the purpose of considering requests for bifurcation, is whether a joint trial of a criminal street gang enhancement and the underlying offense would have the same effect as joinder of a weak case with a strong case. If the spillover effect of gang enhancement evidence will prejudice the defendants right to a fair trial on the charged offense, bifurcation may be appropriate. (See Williams v. Superior Court, supra, 36 Cal.3d at pp. 452-454, 204 Cal.Rptr. 700, 683 P.2d 699.)
If consideration of the foregoing factors, as well as any other pertinent circumstances presented by the individual case, will compromise the defendant's right to a fair trial, the request for bifurcation should be granted.

f. Considerations of judicial economy not determinative.

The People argue a unitary trial avoids the expenditure of funds and judicial resources that bifurcation requires and these favorable benefits of a joint trial must be considered by the trial court. (People v. Bean (1988) 46 Cal.3d 919, 936, 251 Cal. Rptr. 467, 760 P.2d 996; People v. Balderas, supra, 41 Cal.3d at p. 173, 222 Cal. Rptr. 184, 711 P.2d 480.) Granted, bifurcation of criminal street gang enhancements results in the inconvenience of a second separate phase of the trial. However, if limited to appropriate cases, bifurcation of criminal street gang enhancements will not cause any more disruption *926 to the orderly administration of justice than trials involving bifurcation of prior conviction allegations, which occur on a regular basis.
In fact, bifurcation of criminal street gang enhancements reduces the time needed to try the underlying offense and, to the extent trials result in hung juries or acquittal at the initial phase and do not advance to the second trial phase, there will be a net savings of court time. Further, the gang enhancement often is based almost entirely on the testimony of a gang expert. (See People v. Gardeley (1996) 14 Cal.4th 605, 617-620, 59 Cal.Rptr.2d 356, 927 P.2d 713.) Even where the same expert testifies at the trial of the underlying offense, we perceive no great inconvenience in requiring an expert witness to testify at a second trial phase.

g. Application here.

As with motions for severance, we initially evaluate the trial court's ruling on a request for bifurcation in light of the showings made and facts known at the time the motion was made. (People v. Balderas, supra, 41 Cal.3d at p. 171, 222 Cal.Rptr. 184, 711 P.2d 480.) Here, the information charged appellants with robbery and attempted carjacking. The robbery count was based on the allegation appellants forcibly removed Rodriguez's necklace at knife-point. The attempted carjacking count was based on Hernandez's threat to take Stepanyan's Honda if appellants did not receive an adequate amount of money.
In order to prove that Fuentes and Hernandez took Rodriguez's property by means of force or fear, the trial court properly ruled the People were entitled to prove the nature of the threat, "You don't know who you're dealing with. You are dealing with Hawthorne Little [Watts]," in order to show the force or fear element of robbery. Thus, the trial court correctly determined that some gang evidence would have been admissible at a trial of the underlying offenses to prove the robbery charge.
However, the People proved the threat without the expert gang testimony that the individual who made the threat was, in fact, a gang member who was affiliated with the largest gang in the state, had gang tattoos and that gang members commit crimes as a way of life in order to terrorize law abiding citizens. Because the People could not have introduced this gang enhancement evidence at a separate trial of the charged offenses, it was not cross-admissible.
With respect to whether the gang enhancement evidence was unduly inflammatory, it repeatedly has been held that gang evidence uniquely tends to evoke an emotional bias against the defendant as an individual, has very little relevance to the issue of guilt of the underlying charge and can deprive the accused of a fair trial. (People v. Karis (1988) 46 Cal.3d 612, 638, 250 Cal.Rptr. 659, 758 P.2d 1189; People v. Bojorquez (2002) 104 Cal.App.4th 335, 345, 128 Cal.Rptr.2d 411; People v. Felix (1994) 23 Cal.App.4th 1385, 1396, 28 Cal. Rptr.2d 860.) Here, we conclude Goetz's testimony that gang members are criminals who commit crime to terrorize citizens and protect their turf must be seen as highly inflammatory. Accordingly, this factor must be resolved in favor of bifurcation.
This leaves consideration of whether the joinder of the criminal street gang enhancement had the effect of joining a "weak" case with a "strong" case. Here, although the evidence of guilt with respect to the charge of robbery was strong, the evidence in support of the charge of attempted carjacking was weak. Indeed, as noted above, the trial court dismissed the charge of attempted carjacking in the interests *927 of justice at the close of the People's case. This being the case, the gang enhancement evidence had the potential to "spill-over" to the "weak" case of attempted carjacking. Balancing the competing considerations presented, we conclude the trial court's denial of the request was an abuse of discretion.

h. The erroneous denial of the motion to bifurcate does not require reversal in this case.

Having found error in the denial of the request for bifurcation, we turn to the issue of prejudice. The California Supreme Court has applied harmless error analysis to a denial of a motion to sever. People v. Pinholster (1992) 1 Cal.4th 865, 4 Cal.Rptr.2d 765, 824 P.2d 571, held that any error in failing to sever a charge of robbery of one victim was clearly harmless where there was overwhelming evidence of the defendant's guilt on the remaining charges of murder, burglary, and robbery of other victims. Pinholster applied the standard set forth in People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243, namely, whether it was reasonably probable that a result more favorable to the defendant would have been reached if the charges had been severed. (People v. Pinholster, supra, at pp. 931-932, 4 Cal. Rptr.2d 765, 824 P.2d 571.)
Applying the same standard here, we conclude the denial of the request for bifurcation was harmless. Contrary to Fuentes's assertion, evidence of guilt on the charge of robbery was strong. Rodriguez consistently identified Hernandez and Fuentes as her assailants, and each was apprehended under circumstances suggesting consciousness of guilt. In their opening statements, defense counsel conceded the jury likely would conclude some offense had been committed with respect to the taking of the necklace. Counsel for Hernandez argued the offense was merely theft and counsel for Fuentes sought to limit liability for the offense to Hernandez.
However, these arguments were untenable in light of Rodriguez's trial testimony that Fuentes and Hernandez robbed her at knifepoint. Although Stepanyan's testimony differed somewhat from Rodriguez's, Rodriguez, the victim of the robbery, was in the best position to relate the details of the incident, and Stepanyan corroborated the vast majority of her testimony. Thus, the evidence strongly supported the conclusion the offense committed by Hernandez and Fuentes was robbery.
The possibility the gang enhancement evidence would prejudicially "spill-over" and affect the jury's consideration of the attempted carjacking count was eliminated when the trial court dismissed that count in the interests of justice.
Further, all of the predicate offenses introduced to show that appellants' gang met the statutory definition of a criminal street gang involved driving a vehicle without the owner's consent, an offense which is considerably less inflammatory than the charged offense of robbery or the dismissed offense of attempted carjacking. Moreover, individuals other than Hernandez or Fuentes committed each of the predicate offenses. Thus, there was little risk of undue prejudice to Hernandez or Fuentes from proof of these predicate offenses. Additionally, there was nothing particularly inflammatory about the appellants' gang monikers, Smiley and Looney.
This leaves the question of the prejudice that flowed from Detective Goetz's expert gang testimony that Hernandez and Fuentes were gang members and, as such, engaged in criminal activity as a way of life. As repeatedly has been observed, this is highly inflammatory testimony. However, based on the facts of this case, we conclude the jury would not have reached a result more favorable to appellants absent Goetz's testimony.

*928 i. Failure to give a limiting instruction does not alter the result.

The trial court indicated it would instruct the jury on the use of the gang evidence at the appropriate time but failed to do so. Fuentes contends the trial court's inadvertent failure to instruct the jury not to consider the gang testimony as evidence of bad character or propensity to commit crime compounded the refusal to bifurcate the criminal street gang enhancement. Fuentes argues the result would have been more favorable had the jury been appropriately admonished.
The failure to give cautionary instructions has been held not to warrant reversal if, upon reweighing the evidence, a more favorable result does not appear reasonably probable. (Estelle v. McGuire (1991) 502 U.S. 62, 71-75, 112 S.Ct. 475, 116 L.Ed.2d 385; People v. Bunyard (1988) 45 Cal.3d 1189, 1224, 249 Cal.Rptr. 71, 756 P.2d 795; People v. Shoals (1992) 8 Cal. App.4th 475, 498,10 Cal.Rptr.2d 296.)
It does not appear a limiting instruction would have altered the result in this case. The jury was instructed it was not bound by an expert opinion, it could disregard any opinion it found to be unreasonable, the weight to be given an opinion was for the jury to decide, the facts of any hypothetical question are not necessarily true and oral statements made by a defendant before being charged with a crime should be viewed with caution. (CALJIC Nos. 2.80, 2.82, 2.71.7.) Also, defense counsel reminded the jury not to substitute "allegations of gang membership for proof of the underlying crime," and that Goetz was a professional witness who was not present at the time of the offense and had conducted no investigation.
We cannot conclude the jury would have reached a result more favorable to Hernandez and Fuentes had the limiting instruction been given. (People v. Bunyard, supra, 45 Cal.3d at p. 1225, 249 Cal.Rptr. 71, 756 P.2d 795; People v. Shoals, supra, 8 Cal.App.4th at p. 499, 10 Cal.Rptr.2d 296.)
Because the omission did not result in prejudice, appellants' related claim of ineffective assistance based on defense counsel's failure to remind the trial court to give a limiting instruction fails. (People v. Mendoza, supra, 24 Cal.4th at p. 170, 99 Cal.Rptr.2d 485, 6 P.3d 150.)
[[/]][**]

DISPOSITION
The judgments are affirmed.
We concur: CROSKEY, J., and KITCHING, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions not to be published are sections 2 through 4 of the Discussion.
[1] Subsequent unspecified statutory references are to the Penal Code.
[2] A bifurcated procedure was utilized with respect to a criminal street gang enhancement in People v. Olguin (1994) 31 Cal. App.4th 1355, 1367, 37 Cal.Rptr.2d 596, a case involving the shooting of a rival gang member occasioned by the defacement of the defendant's gang-related graffiti. However, Olguin had no occasion to address the propriety of the trial court's ruling on the bifurcation issue and is thus not directly relevant to our discussion.
[3] People v. Funes (1994) 23 Cal.App.4th 1506, 1518, 28 Cal.Rptr.2d 758, declined to address whether, as a general proposition, gang enhancements under section 186.22 might be bifurcated. Funes instead decided the trial court in that case properly admitted evidence of gang affiliation and activity to prove intent and motive. Funes concluded that, once the trial court decided gang evidence was admissible for these purposes, it did not abuse its discretion under Evidence Code section 352 when it permitted the prosecution to present the entire picture of the rivalry between the two gangs. (People v. Funes, supra at p. 1519, 28 Cal.Rptr.2d 758.)
[4] Section 186.22, subdivision (a), states: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in the county jail ... or ... state prison...."
[5] The death penalty was not sought in this case and thus is not an applicable factor here.
[**] See footnote *, ante.